UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| REBECCA HOLLAND, on her own behalf and on behalf of those similarly situated, | NO. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| ELEVANCE HEALTH, INC., f/k/a ANTHEM, INC., | **(CLASS ACTION)** **JURY TRIAL DEMANDED** **INJUNCTIVE RELIEF SOUGHT** |
| Defendant. | |

## INTRODUCTION

1.       This case is about disability discrimination in the provision of healthcare coverage. Specifically, this case is about a health insurance company's categorical exclusion of prescription medication for the treatment of obesity and the resultant discrimination against people with the disability of obesity. This type of discrimination is not new; rather, it follows from a long history of prejudice, exclusion, and stigmatization of people with disabilities in general and of people diagnosed with obesity, in particular. The Affordable Care Act's Section 1557, 42 U.S.C. § 18116, protects individuals with disabilities—including those diagnosed with obesity—from such discrimination in the design and administration of their health coverage.  This case seeks to enforce those protections.

2.       Defendant Elevance Health, Inc. f/k/a Anthem, Inc. ("Anthem") discriminates on the basis of disability when it designs, insures, and administers health plans that exclude all coverage for prescription medications to treat obesity, a medical condition that is also a disability.

3.       Specifically, semaglutide 1 (marketed under the brand names of Ozempic and Wegovy), tirzepatide (marketed under the brand name Zepbound), and other prescription medications have been shown to be remarkably effective at treating obesity. Their medical

efficacy, demonstrated through multiple random-controlled, double-blind studies (considered the "gold standard" for evidence-based medicine), is well-established.

4.     Yet, Anthem designs, insures, and administers health plans that exclude coverage of these medications whenever they are sought to treat obesity (hereinafter the "Obesity Exclusion"), but not when they are sought to treat other health conditions. Anthem does not claim that such medicines are excluded because they are not medically necessary to treat obesity.  Indeed, Anthem covers the medications as medically necessary for obesity in some health plans. Thus, Anthem excludes these medications without any medical or scientific basis.

5.     Anthem's Obesity Exclusion is irrational, arbitrary, and likely more expensive than covering prescription medications for obesity. Indeed, the longer Anthem continues to design and administer the Obesity Exclusion, the more it puts the health and lives of its enrollees diagnosed with obesity at risk for the many symptoms and co-occurring conditions associated with obesity.

6.     Plaintiff Rebecca Holland is an enrollee in an Anthem-insured health plan who was subjected to disability discrimination by Anthem because she is diagnosed with obesity, a disabling health condition, and she requires treatment with medically necessary prescription medications for that health condition. Specifically, Anthem denied coverage of medically necessary medications prescribed to Ms. Holland because the medications were prescribed to treat obesity and therefore excluded under the terms of the health plan that Anthem designed.

7.     Anthem is a "health program or activity" subject to the Affordable Care Act's anti-discrimination law, known as Section 1557 and found at 42 U.S.C. § 18116.

8.     As an entity subject to Section 1557, Anthem has an independent legal and fiduciary duty to Ms. Holland to design and administer health benefits in a non-discriminatory manner.  Based on information and belief, Anthem also has a contractual duty with its enrollees to

2

design and administer health benefits in a non-discriminatory manner, consistent with federal law.

9.     Anthem breached its duty of non-discrimination when it intentionally designed and administered health plans that discriminate on the basis of disability. Specifically, Anthem has discriminated and continues to discriminate against Ms. Holland and other Anthem plan enrollees diagnosed with obesity by denying coverage of the prescription medications that they require based solely on the fact that the medications are required to treat the disability of obesity.

10.     That is, Anthem designs the health plans it offers in a manner that permits employers to exclude prescription drug coverage for obesity in their employee health benefit plans.

11.     Anthem offers fully-insured plans, where individuals and/or employers pay a fixed premium for Anthem to cover health care claims. It also offers self-insured plans, where Anthem administers claims for a fee (acting as a "third-party administrator" or "TPA") but where employers ultimately pay for any approved claims.

12.     Some or all of Anthem's fully insured plans exclude coverage for prescription drugs that treat obesity.

13.     Based on information and belief, Anthem offers employers with self-funded plans the choice of excluding all coverage for prescription drugs to treat obesity.

14.     Ms. Holland's Anthem health plan contains an exclusion for "any drug mainly used for weight loss." Ex. 1: Plan at 65, 86.

15.     Ms. Holland's plan states that "[e]xcluded items" like weight loss drugs "will not be covered even if the service, supply, or equipment is Medically Necessary." *Id.* at 78.

16.     Anthem's health plans generally cover prescription medications that appear on Anthem's Prescription Drug List.  Ex. 2: National Drug List.

17.     Anthem's Prescription Drug List matches FDA-approved drugs with diagnoses or

conditions the drugs treat and does not include drugs that have not been deemed medically necessary to treat the listed diagnosis or condition.

18.     The Prescription Drug List for Ms. Holland's Anthem health plan is Anthem's "4-Tier Prescription Drug List." The List includes Wegovy, Zepbound, and Saxenda as medically necessary to treat obesity, but in Ms. Holland's health plan, they are excluded from coverage, as a "benefit exclusion." *Id.*

19.     Without the Obesity Exclusion, the weight loss medications would have been covered, as they are considered medically necessary by Anthem and included on the Prescription Drug List – even when used to treat obesity.  Ex. 2: National Drug List.

20.     As a result of Anthem's Obesity Exclusion, Ms. Holland and proposed class members do not have access to the prescription medications that they require to treat their disability and diagnosed health condition of obesity. At the same time, other enrollees have access to prescription medications that are medically necessary to treat their diagnosed health conditions, including the same or similar medications.

21.     This is disability discrimination. Ms. Holland, on behalf of similarly situated others, challenges Anthem's Obesity Exclusion as a form of illegal disability discrimination in violation of Section 1557.

22.     Ms. Holland and other similarly situated enrollees—all of whom are diagnosed by their treating physicians with obesity and have been prescribed medically necessary prescription medications to treat their obesity—are "qualified individuals with disabilities." *See Cook v. Rhode Is. Dep't of Mental Retardation,* 10 F.3d 17 (1st Cir. 1993); *Mendez v. Brown*, 311 F. Supp. 2d 134, 142 (D. Mass. 2004).

23.     Anthem discriminates on the basis of disability against enrollees with obesity by

4

designing and administering an exclusion of all coverage for medically necessary prescription medications to treat their diagnosed condition of obesity.

24.    Based on information and belief, class members' medical diagnosis of obesity triggers the denial of coverage for the prescription medications they need.

25.    The Obesity Exclusion is grounded in the historic isolation and segregation of people with disabilities, including those with obesity, from mainstream American society. *See* 42 U.S.C. § 12101(a)(2)– (3). The Obesity Exclusion is one of many historical yet ongoing discriminatory barriers that individuals with disabilities continually encounter and that anti-discrimination laws were designed to combat. *See* 42 U.S.C. § 12101(a)(5). Categorical exclusions of a particular treatment were routinely applied when the treatment at issue was overwhelmingly required by individuals with disabilities and not the general population. *See* Blake, Valarie, *Restoring Civil Rights to the Disabled in Health Insurance,* 95 Neb. L. Rev. 1071, 1086 (2017) ("Blake"). Indeed, before the enactment of the Affordable Care Act ("ACA"), health insurers purposefully and legally eliminated coverage of such treatment to avoid covering the needs of people with disabilities. *Id.* That is the case with Anthem's Obesity Exclusion.

26.    Such historic exclusionary practices against individuals with disabilities were based on the misperception that persons with disabilities cannot participate in work, benefit from medical treatment, or fully engage in other aspects of society. For people diagnosed with obesity, historic discrimination often took the form of excluding coverage because their condition was viewed as "voluntary" or a matter of "willpower."

27.    Today, it is widely accepted that obesity is a chronic medical disease, not an attitudinal state that can be addressed with "better choices" or more "willpower." Rather, just like any other chronic medical disease, obesity is treated with effective medical treatment, including

5

prescription medications and surgery. Despite this, health entities like Anthem continue to exclude safe, effective and medically necessary treatment for obesity.

28.     Based on information and belief, the historic exclusion of coverage for prescription medications for obesity was not reexamined by Anthem when the Affordable Care Act's anti-discrimination laws took effect. Such discrimination is no longer legal under the ACA.  Anthem's failure to evaluate whether its Obesity Exclusion was a form of disability discrimination is "thoughtless indifference" or "benign neglect" of the coverage needs of insureds with disabilities, and a form of discriminatory prejudice. *See Payan v. L.A. Cmty. Coll. Dist.,* 11 F.4th 729, 737 (9th Cir. 2021).

29.     In short, the Obesity Exclusion is a remnant of the historic exclusionary treatment of people with disabilities by Anthem and, since the enactment of the ACA, is illegal discrimination.

## JURISDICTION AND VENUE

30.     This action arises under Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

31.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the Constitution and laws of the United States.

32.     Declaratory relief is authorized by Rules 57 and 65 of the Federal Rules of Civil Procedure and by 28 U.S.C. §§ 2201 and 2202.

33.     Venue is proper under 28 U.S.C. § 1391(b)(2) and Local Rule 3(b) because, *inter alia*, a substantial part of the events giving rise to the claim occurred in Cumberland County, Maine.

34.     The Court has personal jurisdiction over Anthem because Anthem does business in Maine, including providing health insurance to thousands of Maine residents.

## PARTIES

35.     ***Plaintiff Rebecca Holland.*** Ms. Holland is insured under an Anthem-designed, insured and administered health plan through her employment with the public school district in Falmouth, Maine, whose employees receive Anthem's health insurance through the Maine Education Association Benefits Trust ("MEABT"). *See* Ex. 1: Plan.

36.     ***Defendant Elevance Health, Inc. f/k/a Anthem.*** Defendant Elevance Health, Inc. is a health insurance company. Elevance is headquartered in Indiana and is engaged in the business of insurance in the state of Maine.

37.     Elevance Health was formerly known as Anthem, Inc. and is referred to as Anthem herein. On or about June 28, 2022, Anthem, Inc. rebranded as Elevance Health, Inc.

38.     Anthem is a health insurance company that designs, issues, delivers and administers insured health plans like that used by the MEABT in which Ms. Holland is enrolled. Anthem also designs and administers "self-funded" health plans on behalf of employers or other payors, acting as TPA.

39.     Elevance continues to offer health insurance plans branded under the Anthem name, including Anthem Blue Cross and Blue Shield plans in fourteen states, including Maine.

40.     Elevance offers these plans through its subsidiaries. For example, Ms. Holland is enrolled in a plan held by Anthem Health Plans of Maine, Inc. doing business as Anthem Blue Cross and Blue Shield, which is a subsidiary of Elevance Health, Inc.

7

## FACTUAL ALLEGATIONS

I.      **Factual Background About Obesity**

      A.  **Obesity Is a Physiological Impairment or Disease Affecting One or More Major Bodily Functions**

41.     Obesity is a chronic disease that impacts one or more body systems, even without any secondary, underlying physical conditions.

42.     In 2013, the American Medical Association ("AMA") passed a landmark policy that recognized "obesity as a disease state with multiple pathophysiological aspects requiring a range of interventions to advance obesity treatment and prevention." *See* AMA Policy H-440.842.[1]

43.     Dozens of other professional organizations, medical and public health entities, and governmental and non-governmental organizations, including the World Health Organization and National Institutes of Health, similarly recognize that obesity is a physiological disease.

44.     This is consistent with conclusions throughout the medical community regarding the nature and impact of obesity, including opinions of the American Association of Clinical Endocrinologists, the American Academy of Family Physicians, the American College of Cardiology, the American College of Surgeons, the American Society for Reproductive Medicine, the American Urological Association, the Endocrine Society, the Obesity Society, the Society for Cardiovascular Angiography and Interventions, and the Food and Drug Administration. *See* Bray, Kim, and Wilding, Obesity: *A Chronic Relapsing Progressive Disease Process, A position statement of the World Obesity Federation* (2017) (hereinafter "Bray").[2]

45.     Obesity involves numerous pathophysiological processes, including changes at the

---

[1]     https://policysearch.ama-assn.org/policyfinder/detail/h-440.842?uri=%2FAMADoc%2FHOD.xml-0-3858.xml (last visited 8/26/24).
[2]     https://onlinelibrary.wiley.com/doi/10.1111/obr.12551 (last visited 8/26/24).

cellular, hormonal, neurochemical, and organ levels. It causes or contributes to altered production of numerous hormones, which have pathologic effects across bodily systems and cause further adverse health effects.

46.     At a neurochemical level, obesity leads to inflammation within appetite control centers in the hypothalamus, which in turn decreases response to hunger and satiety signaling from other parts of the body. This appetite dysregulation, which leads to elevated hunger and diminished satiety, makes behavioral changes to decrease food intake progressively more challenging for persons who have obesity. This and other biochemical changes likely underlie why sustained weight loss is so difficult to achieve and maintain for people with obesity.

47.     Obesity is not merely a risk factor for disease. Rather, obesity is a disease that can causally contribute to ill health and substantial functional impairment of major life activities, such as an individual's respiratory process and ability to walk or run.

48.     Indeed, obesity has a strong association with the "impairment of health-related quality of life." Djalalinia, Qorbani, Peykari, Kelishadi, *Health impacts of Obesity*, Pak J Med Sci. (2015).[3]

49.     Functional impairments such as osteoarthritis are associated with obesity, as are diabetes, hypertension, cancer, gallstones, and psychological distress from stigmatization. *See supra* Bray; WHO Fact Sheet, *Obesity and Overweight* (March 2024) (hereinafter "WHO Fact Sheet").[4]

50.     Obesity influences the quality of living, such as sleeping or moving. WHO Fact Sheet. This includes sleep impairments. As the American Society for Metabolic and Bariatric

---

[3] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4386197 (last visited 8/26/24).
[4] https://www.who.int/news-room/fact-sheets/detail/obesity-and-overweight#:~:text=Key%20facts,years%20and%20older)%20were%20overweight (last visited 8/26/24).

Surgery has explained, pain, sleep apnea, other breathing problems, the need to urinate more frequently, and altered regulation of body temperature can result in poor sleep for people with obesity. American Society for Metabolic and Bariatric Surgery ("ASMBS"), Disease of Obesity.[5]

51.     In sum, obesity is a recognized physiological medical condition that substantially impairs major bodily functions, including one's endocrine, cardiovascular, and musculoskeletal systems. It is an impairment that causes concurrent physiological changes in the body and is caused by a variety of factors including physiological factors. This is true for all individuals who are diagnosed with obesity and whose physicians recommend treatment for the disease with prescription medications.

52.     Critically, being overweight, as opposed to being obese, means having more body weight than is considered normal for an individual's age and height. Being overweight, by itself, is not a disease condition or impairment. Unlike obesity, being overweight, by itself, does not substantially impact major bodily functions.

53.     People diagnosed with obesity experience substantial limitation of their ability to perform major bodily functions when compared to the majority of people in the general population.

**B.  Diagnosing Obesity**

54.     Obesity is a chronic disease that requires screening, diagnosis/evaluation, and intervention/treatment.

55.     The initial screening for obesity is usually done by calculating body mass index ("BMI"), a ratio of weight and height that has been shown in actuarial and public health studies to correlate with risk for premature mortality.

56.     While having a BMI of 30 is commonly associated with obesity, relying on BMI

---

[5] https://asmbs.org/patients/disease-of-obesity/ (last visited 8/26/24).

alone may result in misclassification, (*i.e.*, not everyone with BMI over 30 will be diagnosed with obesity by their medical provider, and sometimes people with lower BMI may be diagnosed with obesity) but as a screening tool, it is inexpensive and efficient.

57.     A diagnosis of obesity is reached after a diagnosing provider considers the clinical effects of BMI on a patient's health via a medical history and physical examination. The clinical review considers the patient's risk for obesity, history of weight trajectory, and impact of the patient's weight on their health status, quality of life and functionality.

58.     Based upon these results, patients may be diagnosed with obesity and be eligible for evidence-based, effective medical treatment to treat that diagnosed medical condition.

### C. Obesity Is Treated with Medically Necessary Medications, Counseling, and/or Surgery

59.     Evolving research on obesity reveals that it is a chronic, relapsing, multi-factorial disease. It is not resolved through "personal responsibility" or willpower. It is a disease that benefits from medical treatment.

60.     There are proven, clinically effective treatments for obesity.

61.     These treatments include behavioral counseling, Food and Drug Administration ("FDA") approved medications or medical device placement, and/or bariatric/metabolic surgery.

62.     For example, in 2021, the FDA approved Wegovy as a medication for treatment of obesity.[6]

63.     Wegovy works by mimicking a hormone called glucagon-like peptide-1 (GLP-1) that targets areas of the brain that regulate appetite and food intake.

64.     Wegovy was reviewed in four random, double-blind, placebo-controlled trials.

---

[6] https://www.fda.gov/news-events/press-announcements/fda-approves-new-drug-treatment-chronic-weight-management-first-2014 (last visited 3/14/24).

Patients in the trials lost between 6% and 12.4% of their initial body weight, compared to those who received the placebo.

65.     Tirzepatide, the generic version of another anti-obesity drug Zepbound, is another example of a medication approved by the FDA for treatment of obesity.[7]

66.     Tirzepatide has been the subject of at least two random double-blind placebo-controlled trials for treatment of obesity or weight management with a co-occurring weight-related condition. In those trials, patients receiving Tirzepatide achieved statistically significant weight reduction, when compared with those receiving placebo treatment.

**D.  History of Disability-Based Exclusions in Health Coverage**

67.     Based on information and belief, the Obesity Exclusion is based on historic stigma and prejudice against people diagnosed with obesity.

68.     Commercial health insurance grew out of contracts established in the 1930s and 1940s in which employers paid physicians a monthly fee for providing healthcare to their employees. Eventually, commercial insurance stepped in to provide this coverage for employers. Initially, commercial health insurers offered coverage only to employer-based groups. Eventually, insurers began to offer direct enrollment to individuals as well as employer-based groups. These plans could freely avoid providing coverage to any groups that were viewed as undesirable risks, including individuals with disabling conditions. *See* Blake, p. 1085. Based upon information and belief, Anthem's predecessors (generally various Blue Cross Blue Shield plans) did not provide coverage for disability-related conditions, including obesity, during this early period.

69.     In 1965, the Medicare and Medicaid Act was signed into law. These two programs were intended to meet the needs of the elderly and disabled, two populations that were generally

---

[7] https://www.fda.gov/news-events/press-announcements/fda-approves-new-medication-chronic-weight-management (last visited 8/26/24).

excluded from coverage by private insurance. This created a separate system for people who were elderly or disabled. Medicare began to cover bariatric surgery for treatment of obesity starting in 2006.

70.     Based on information and belief, at some point, Anthem or its predecessors began to cover bariatric surgery for treatment of obesity, but only in certain of its health plans and only under very narrow circumstances, as discussed below.

71.     In fact, until the ACA was passed, health insurers like Anthem were free to discriminate in the design of their benefits, including benefits related to obesity. *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 948 (9th Cir. 2020). The ACA ended this form of discrimination for covered health plans. It requires covered health entities to ensure that their benefit design and administration do not result in disability discrimination. *See* 42 U.S.C. § 18116(a). Accordingly, upon implementation of the ACA, covered health entities, like Anthem, should have reconsidered whether historic disability-based exclusions, like the Obesity Exclusion, were the result of discrimination or were justified using the same medical and scientific standards applied to all other covered services.

## II.     Factual Background about Anthem's Discriminatory Plan

### A.  The Obesity Exclusion

72.     Anthem designs, funds, and administers health plans for hundreds of thousands of health consumers across the country.

73.     Anthem's health plans generally cover medically necessary medications to treat illness or injury. *See* Ex. 2: National Drug List; *see also* Ex. 1: Plan at 67–77 (explaining the prescription drug benefits in Ms. Holland's plan).

74.     Anthem's Prescription Drug List recognizes that prescription medications like

Zepbound and Wegovy can be medically necessary and effective for the treatment of obesity. *See* Ex. 2: National Drug List.

75.     Yet, Anthem designed the Obesity Exclusion and insured and administered the Obesity Exclusion in many of its plans. It continues to do so.

76.     Anthem's design, administration, and enforcement of the Obesity Exclusion is a form of illegal discrimination under Section 1557, since it is based on an enrollee's diagnosis with obesity, a disabling health condition.

77.     Anthem designed the Obesity Exclusion to target and exclude the prescription medications needed by enrollees with obesity. The denial of coverage is triggered by a request for a prescription medication used to treat a diagnosis of obesity. In essence, the diagnosis of obesity causes the denial. But the Obesity Exclusion is not based upon clinical or medical evidence.

78.     Anthem excludes all coverage for prescription medications it deems related to obesity, even though it covers similar prescription medications for other medical conditions, such as diabetes. To the extent enrollees who are not diagnosed with obesity seek treatment related to weight control, such treatment is already excluded. Thus, the Obesity Exclusion is targeted at excluding medically necessary treatment required by enrollees diagnosed with obesity.

79.     The application of Anthem's Obesity Exclusion denies individuals diagnosed with obesity, a disabling condition, the benefits and health coverage available to other enrollees. Moreover, Anthem's exclusion is based on their disability.

80.     Specifically, in Ms. Holland's health plan, all coverage for obesity is excluded, except for extremely limited coverage for bariatric surgery for people diagnosed with severe obesity. Anthem limits coverage of this medically necessary surgery to only (1) enrollees diagnosed with "morbid" obesity (more than 40 BMI) and (2) who have experienced the condition

14

for more than five (5) years. *See* Ex. 1: Plan at p. 67.

81.     Anthem's 5-year "waiting period" to be eligible for coverage of treatment with bariatric surgery is an additional form of facial disability discrimination under Section 1557, as no other benefit in the Anthem plan includes a 5-year waiting period.

82.     It is also a violation of the Affordable Care Act's prohibition on pre-existing condition exclusions. *See* 42 U.S.C. §§ 300gg-3(a), 300-gg4(a); 29 C.F.R. §2590.715-2704(a)(1); 29 C.F.R. §2590.701-2 (the definition of "Pre-Existing Condition Exclusion" includes any limitation or exclusion of an enrollee's benefits as a result of information related to an enrollee's health status before the date coverage is denied); *see also* 29 C.F.R. §2590.715-2708 (waiting periods for eligibility may not exceed 90 days); 29 C.F.R. §2590.702(2)(i)(B)("[B]enefits provided under a plan must be uniformly available to all similarly situated individuals").

**B.  Intentional Discrimination**

83.     Anthem's design and administration of the Obesity Exclusion is an intentional act that is discriminatory on its face. *Schmitt,* 965 F.3d at 954.

84.     Given the history discussed above and on information and belief, the Obesity Exclusion, in one form or another, has always been part of the benefit design in Anthem's health plans.

85.     Based on information and belief, Anthem did not consider whether the Obesity Exclusion in the health plans it insured and administered resulted from historic discrimination and prejudice, even when Anthem evaluated whether its benefit design practices complied with the non-discrimination requirements in the ACA.

86.     Anthem continues to design and administer the Obesity Exclusion in certain health plans it designs and administers simply because it has always done so.

15

87.     But make no mistake, the Obesity Exclusion is targeted at eliminating otherwise medically necessary coverage for its enrollees who are diagnosed with obesity and are disabled due to that diagnosis.

88.     The only purpose of the Obesity Exclusion is to eliminate coverage of medically necessary prescription medications for the treatment of obesity, *i.e.*, the precise coverage often needed by disabled enrollees diagnosed with obesity.

89.     By intentional design, the Obesity Exclusion is uniquely and specifically targeted at enrollees disabled due to a diagnosis of obesity. Based on information and belief, Anthem deliberately designed and administered the Exclusion to ensure that medically necessary prescription medications for the treatment of obesity needed by disabled enrollees diagnosed with obesity would not be covered.

## C.  Proxy Discrimination

90.     The Obesity Exclusion, while described in Ms. Holland's Anthem health plan as an exclusion of prescription medications related to "weight loss," is also a proxy for discrimination against enrollees diagnosed with obesity, all of whom are "qualified individuals with disabilities" under Section 1557.

91.     Proxy discrimination occurs when a defendant enacts a policy that treats people differently on the basis of seemingly neutral criteria that are so closely associated with a protected group that the discrimination on the basis of those criteria is essentially facial discrimination against the protected group.

92.     Here, even if the Exclusion is characterized as a "weight loss" exclusion, the "fit" of the Exclusion (*i.e.,* how closely it correlates to disability) is sufficiently close to constitute proxy discrimination.

16

93.     As described above, all people diagnosed with obesity who require prescription medications to treat their diagnosed health condition of obesity meet the definition of "disability" relied upon in Section 1557, such that an exclusion of all prescription medications for weight loss that would otherwise be considered medically necessary for the treatment of obesity discriminates against people with the disability of obesity.

94.     In other words, there is a reasonably strong correlation between disability and treatment with medically necessary weight loss drugs, as indicated by Anthem's Prescription Drug List. *See* Ex. 2: National Drug List.

95.     That is, there is a close "fit" between people with obesity and those who require prescription medications that are not covered because of the Obesity Exclusion. *See Fuog v. CVS Pharmacy, Inc.*, 2022 U.S. Dist. LEXIS 84045, at *14 (D.R.I. May 10, 2022) (at the pleading stage, similar allegations were sufficient for a Section 1557 proxy discrimination claim to proceed). In sum, the Obesity Exclusion is illegal proxy discrimination because it targets disabled enrollees who seek medically necessary weight loss treatment for their disability of obesity.

**D.  Disparate Impact Discrimination**

96.     Alternatively, even if the Court were to conclude that the Obesity Exclusion is "facially neutral," and not a form of "proxy" discrimination, the Obesity Exclusion disparately impacts enrollees with the disability of obesity. Specifically, Anthem's Exclusion denies enrollees diagnosed with obesity "meaningful access" to the prescription medication benefit and to the administrative appeal and external review process.

97.     Enrollees diagnosed with obesity do not receive prescription drug treatment for their health condition, such that they do not have "meaningful access" to the prescription drug benefit. At the same time, enrollees with other diagnosed health conditions have access to

medically necessary medications to treat their conditions. In sum, the Exclusion results in the disproportionate denial of coverage of medically necessary medication for people with obesity compared to other enrollees.

98.     The fact that the Obesity Exclusion may impact people who are not disabled, a form of "over-discrimination," does not relieve Anthem from liability. *See Schmitt,* 965 F.3d at 959. While non-disabled enrollees may seek weight control services, those services are not typically medical in nature (*i.e.,* they are not prescribed by a licensed health provider and do not treat a diagnosed health condition of obesity or co-morbid condition). Indeed, none of those enrollees would be eligible for coverage of these medications under Anthem's plan. As a result, those non-disabled individuals would not be entitled to coverage, even if the Obesity Exclusion were removed.

99.     Similarly, the fact that some Anthem plans may cover bariatric surgery for people who have "morbid" obesity for longer than five years does not make the Exclusion any less discriminatory. *See, e.g., Lovell v. Chandler*, 303 F.3d 1039, 1054 (9th Cir. 2002) (a defendant's "appropriate treatment of some disabled persons does not permit it to discriminate against other disabled people under any definition of 'meaningful access.'"). Indeed, as described above, that policy itself discriminates against people with obesity by imposing conditions on coverage that do not apply to other medically necessary treatments. Anthem does not meet the needs of Ms. Holland and the proposed class because they seek medically necessary prescription medications to treat their condition—not bariatric surgery. Indeed, many class members may not be candidates for bariatric surgery and/or they prefer the less invasive, and potentially more effective treatment with prescription medications.

100.     Additionally, enrollees diagnosed with obesity are denied meaningful access to the

18

Anthem administrative appeal and external review procedures. Ms. Holland's Anthem Plan describes procedures for appeals and external review of adverse determinations. However, these procedures are futile for enrollees who are denied coverage due to an exclusion in their plan.

### III. Plaintiff Holland and Other Enrollees Have Been and Continue to be Subject to and Harmed by Anthem's Discriminatory Plan

#### A. Plaintiff Rebecca Holland

101.    Plaintiff Rebecca Holland is one of the many enrollees in Anthem's health plans that contain an Obesity Exclusion.

102.    Ms. Holland is an employee of Falmouth Public Schools. Through her employment with the Maine public school system, Ms. Holland is enrolled in health plan coverage designed, funded, and administered by Anthem. Holland's Anthem health plan contains the Obesity Exclusion.

103.    Ms. Holland is a "qualified person with a disability" because she has been diagnosed with obesity and it substantially limits a major life activity such that she requires medical treatment related to that condition. *See* 42 U.S.C. § 12102(1)(A). The same is true for all proposed class members.

104.    Specifically, Ms. Holland is diagnosed with obesity, a physiological disorder or condition affecting one or more body systems, such that she has an "impairment" under the federal definition of disability. 42 U.S.C. § 12102(1)(A); 29 C.F.R. § 1630.2(h).

105.    Ms. Holland was diagnosed with this condition by a licensed health professional. *See, e.g., Farrington v. Bath Iron Works Corp.*, No. 01-274-P-H, 2003 U.S. Dist. LEXIS 1938, at *36 (D. Me. Feb. 7, 2003); *Scutt v. UnitedHealth Ins. Co.*, 2022 U.S. Dist. LEXIS 45445, *12 (D. Haw. Mar. 15, 2022) (allegations of medically diagnosed impairment were sufficient to plead federal disability discrimination).

19

106.    Additionally, Ms. Holland's obesity "substantially limits" at least one "major life activity." Major life activity includes the operation of major bodily functions, such as operation of the cardiovascular system, endocrine system and musculoskeletal functions. 29 C.F.R. § 1630.2(i)(1)(ii).

107.    As described above, obesity substantially limits major bodily functions, including an individual's endocrine, musculoskeletal, respiratory and cardiovascular systems. This is true for all individuals who are diagnosed with obesity and whose physicians recommend treatment with prescription medication. Consistent with these common limitations for individuals diagnosed with obesity, Holland's obesity substantially limits the major life activities of walking, standing, and sleeping.

108.    Specifically, Ms. Holland has had sleep apnea, numerous foot, shoulder, and other musculoskeletal injuries requiring physical therapy and that have limited her ability to walk and stand for periods of time, has had high cholesterol, all as a result of her condition of obesity. These reflect major life activities that are substantially limited by her medical condition of obesity. Ms. Holland has seen a decrease in these symptoms over the course of the time she has been taking medication to treat her obesity and losing weight.

109.    Holland's ability to perform these major life activities is substantially limited when compared to most people in the general population. *See* 29 C.F.R. § 1630.2(j)(1)(ii); 28 C.F.R. § 36.105(d)(1)(v).

110.    Since at least 2022, Ms. Holland has had a diagnosis of obesity. Ms. Holland has had a documented history of a BMI over 30 since at least 2013.

111.    In approximately September of 2022, Ms. Holland visited the office of her doctor, Rebecca Hemphill, to discuss anti-obesity treatment. Ms. Holland met with a physician's assistant

("PA") at Dr. Hemphill's office. The PA confirmed Ms. Holland's diagnosis of obesity and noted that Ms. Holland had been unable to sustain weight loss despite attempts at diet and exercise. The PA prescribed Wegovy to treat Ms. Holland's obesity, which Anthem then refused to cover.

112.    After Anthem refused to cover Wegovy, Ms. Holland corresponded with the PA and Dr. Hemphill regarding alternative anti-obesity treatments. The PA prescribed Contrave, another medication that is FDA-approved for weight loss but which works differently than semaglutides like Wegovy. Anthem also refused to cover Contrave, which ended up being ineffective for Ms. Holland.

113.    In October of 2022, Dr. Hemphill submitted an appeal to Anthem regarding Wegovy on Ms. Holland's behalf. Dr. Hemphill requested that Anthem cover medication for treatment of Ms. Holland's obesity. Dr. Hemphill stated that Ms. Holland was medically eligible for this treatment, noting Ms. Holland's medical history and medical literature supporting the use of medication for anti-obesity treatment. Anthem did not provide coverage despite this appeal.

114.    Because Anthem refused to cover anti-obesity medication, Ms. Holland obtained semaglutide through a compounding pharmacy, for which she has been paying out-of-pocket since approximately February 2023.  With this medication, Ms. Holland has been able to treat her obesity by losing weight. As noted above, her related symptoms have improved, but without the medication, it is likely she would regain weight and her symptoms would increase.

115.    When Dr. Hemphill moved from being a clinician to an administrator, Ms. Holland moved her care to Dr. Jared Cassin.

116.    In July of 2023, Dr. Cassin wrote a letter to Anthem on Ms. Holland's behalf to assist her in seeking coverage from Anthem for prescription medications to treat obesity. Dr. Cassin reiterated Ms. Holland's obesity diagnosis and noted an additional diagnosis of binge eating

disorder based on her medical history. Dr. Cassin explained that Ms. Holland would benefit from medication to treat her obesity and binge eating disorder. Anthem still did not provide coverage.

117.    In August of 2024, Dr. Cassin submitted a pre-authorization request to Anthem for Wegovy for Ms. Holland. Anthem denied the request and informed Dr. Cassin's office that it could not process the request because the medication was not covered by Ms. Holland's insurance plan.

118.    No administrative appeal is required before a claim under Section 1557 for disability discrimination may be brought.

119.    In any event, such an appeal would be futile given Anthem's clearly articulated position that Ms. Holland's plan does not cover anti-obesity medication. *See Horan v. Anthem Steel Ret. Plan*, 947 F.2d 1412, 1416 (9th Cir. 1991); *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir. 1988).

### B.  Other Enrollees with Obesity

120.    Ms. Holland is not unique. Based upon the Obesity Exclusion, Anthem has a standard policy of denying coverage of medically necessary prescription medications when the medications are sought to treat obesity.

121.    Based on information and belief, Anthem administers the Obesity Exclusion by denying all pre-authorization and post-service claims for prescription medications submitted with a diagnosis related to obesity. That is exactly what occurred for Ms. Holland.

122.    And again, obesity is a chronic disease that requires screening, diagnosis/evaluation and intervention/treatment. Accordingly, clinically effective, evidence-based treatment for obesity (a diagnosed medical condition)—including certain prescription medications—would be covered by Anthem ***but for*** Anthem's decision to design and administer the Obesity Exclusion in its health plans. This includes the prescription medications required by Ms. Holland and the proposed class

that, but for the Obesity Exclusion, would be covered when medically necessary under Anthem's Prescription Drug List and the remaining terms of the health plan.

123.   As a direct result, Ms. Holland and some class members have been forced to pay out-of-pocket for these medications. Other members of the class have been forced to forgo needed prescription medications to treat their obesity.

124.   As a result of Anthem's deliberate discriminatory actions, Anthem enrollees with obesity, like Ms. Holland, do not receive coverage for medically necessary medications to treat their condition.

## CLASS ALLEGATIONS

125.   During the relevant time periods, Holland and members of the class have been enrolled in one or more health plans administered and/or insured by Anthem.

126.   Holland and other members of the class have been diagnosed with obesity and prescribed treatment with prescription medications for that condition. All require medical treatment for their obesity because it poses a substantial interference with major bodily functions, including endocrine, musculoskeletal, respiratory and cardiovascular systems, which are major life activities. Indeed, medical providers do not prescribe these serious medications to treat obesity unless the provider determines that the medications are medically appropriate for treatment of obesity and needed to address the substantial interference with and limitation of major bodily functions that the disease of obesity typically inflicts.

127.   In sum, Holland and other members of the class are "qualified individuals with a disability" under Section 1557.

128.   Holland and proposed class members of the class have been, are, or will be diagnosed with obesity and have been, are, or will be prescribed prescription medications to treat

obesity by a licensed health provider. In other words, Plaintiff and the putative class have required, require, and/or will require prescription medications to treat their obesity.

129.   ***Definition of Class***. The proposed class consists of all individuals who:

(1)   have been, are, or will be enrolled in an Anthem-administered or Anthem-insured health plan that excludes all coverage for prescription medications to treat obesity at any time since four years prior to the initiation of this action;

(2)   have been, are or will be diagnosed with obesity by a medical provider; ***and***

(3)   have required, require or will require treatment for their diagnosed condition of obesity with prescription medications, while enrolled in an Anthem-insured or Anthem-administered health plan.

130.   ***Size of Class***. The proposed class definition is so numerous that joinder of all members is impracticable.

131.   ***Class Representative Rebecca Holland.*** Ms. Holland was diagnosed with obesity on or before she was first prescribed treatment with Wegovy for her obesity in September of 2022. In August of 2024, Ms. Holland's doctor again prescribed Wegovy and requested pre-authorization from Anthem for the medication.

132.   On both occasions, Anthem denied coverage of medically necessary medication prescribed by Ms. Holland's treating physician because Ms. Holland's health plan—designed and administered by Anthem—contains the Obesity Exclusion. Anthem specifically notified Ms. Holland's doctor that the August 2024 pre-authorization request could not be processed because

"the medication is not covered by the plan." Ms. Holland's claims are typical of the claims of the other members of the class because they, too, are subject to the Obesity Exclusion. Ms. Holland will fairly and adequately represent the interests of the class.

133. ***Common Questions of Law and Fact***. This action requires a determination of the following common question: Whether Anthem's design and administration of the Obesity Exclusion violates Section 1557 of the ACA because it subjects Ms. Holland and the proposed class to illegal discrimination based on disability, including disparate treatment, proxy, and disparate impact discrimination. Adjudication of this issue will in turn determine whether: (1) Anthem may be enjoined from designing, enforcing, and administering the Obesity Exclusion in Ms. Holland's plan and in other similar plans; (2) Anthem may be liable for classwide prospective and retrospective injunctive relief and other appropriate classwide equitable relief; and (3) whether Anthem may be liable for other damages related to disability discrimination resulting from its design and administration of the Obesity Exclusion.

134. ***Separate suits would create a risk of varying conduct requirements***. The prosecution of separate actions by proposed class members against Anthem would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(1).

135. ***Anthem Has Acted on Grounds Generally Applicable to the Class.*** Anthem, by imposing the Obesity Exclusion, has acted on grounds generally applicable to the class, rendering declaratory and injunctive relief appropriate respecting the whole class. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(2).

136. ***Questions of Law and Fact Common to the Class Predominate Over Individual***

*Issues.* The claims of the individual class members are more efficiently adjudicated on a classwide basis. Any interest that individual members of the class may have in individually controlling the prosecution of separate actions is outweighed by the efficiency of the class action mechanism. Issues as to Anthem's conduct in applying standard policies and practices towards all members of the class predominate over questions, if any, unique to members of the class. Certification is therefore additionally proper under Federal Rule of Civil Procedure 23(b)(3).

137.    Upon information and belief, there has been no class action suit filed against this defendant for the relief requested in this action.

138.    This action can be most efficiently prosecuted as a class action in the District of Maine where Ms. Holland resides and where Anthem does business.

139.    *Class Counsel*. Holland has retained experienced and competent class counsel. Plaintiff is represented by Sirianni Youtz Spoonemore Hamburger PLLC and Public Justice. Sirianni Youtz Spoonemore Hamburger is a Seattle-based law firm with significant experience representing individuals and classes who have been denied pension, health, or disability benefits under plans governed by federal and state law, including Section 1557 and ERISA. Public Justice is a nonprofit law firm that litigates high stakes issues around the country in federal and state district and appellate courts.

### CLAIM FOR RELIEF
### Disability Discrimination
### Under Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116

140.    Federal disability anti-discrimination law requires that these allegations be construed "broadly in favor of expansive coverage." 28 C.F.R. § 36.105(d)(1)(i); 29 C.F.R. § 1630.2(j)(1)(i).

141.    Additionally, the definition of "disability" under the ACA should be interpreted

broadly in light of the purpose of the ACA and its statutory requirements as a whole. *See, e.g.,*
*Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 955 (9th Cir. 2020) (Because the
ACA is designed to "provide adequate health care to as many individuals as possible" it "imposes
an affirmative obligation [on covered entities] to consider the needs of disabled people and not
design plan benefits in ways that discriminate against them.").

142.     For example, the ACA is designed to ensure that health benefits, like prescription
medications, are not "subject to denial…on the basis of the individuals'…present or predicted
disability." 42 U.S.C. § 18022(4); *see also* 45 C.F.R. § 156.125 (extending anti-discrimination
within health plans providing essential health benefits to discrimination based on disability and
"other health conditions").

143.     Whether one's diagnosed condition of obesity is caused by a different physiological
condition or not is irrelevant under the ACA. Since the ACA's anti-discrimination requirements
are designed to ensure adequate health care coverage for enrollees in the health plans governed by
the law, the source for a particular health condition does not matter. Rather, the ACA's focus is on
ensuring that enrollees get adequate care for their medical conditions.

144.     Because the ACA's purpose is to ensure broad access to health coverage when
medically appropriate, regardless of disability or health condition, the ACA's Section 1557 allows
for claims of disability discrimination, such as the challenge here to elimination of treatment for
obesity, even when similar claims might not be viable under the Rehabilitation Act or the
Americans with Disabilities Act. *See Schmitt,* 965 F.3d at 955.

145.     Here, Plaintiff states this cause of action under the ACA on behalf of herself and
members of the proposed class for purposes of seeking declaratory and injunctive relief, and she
challenges the disability-based discrimination arising out of the design and administration of the

Obesity Exclusion, both facially and as applied to Plaintiff and the proposed class.

146.    Section 1557 of the ACA, 42 U.S.C. § 18116, provides that "an individual shall not, on the ground prohibited under … section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."

147.    Anthem is a covered "health program or activity," a part of which receives federal financial assistance and is therefore a "covered entity" for purposes of Section 1557.

148.    Because Anthem is a covered entity under Section 1557 of the ACA, Plaintiff and members of the proposed class have a right under Section 1557 to receive health benefits designed and/or administered by Anthem free from discrimination on the basis of disability.

149.    A covered entity, such as Anthem, cannot cover medically necessary prescription medications for other enrollees, while excluding the same or similar prescription medications for enrollees diagnosed with obesity, a disabling health condition. To do so is discrimination based upon disability.

150.    Anthem has discriminated against Plaintiff and the members of the proposed class on the basis of disability in violation of Section 1557 and have thereby denied Plaintiff and the members of the proposed class the full and equal participation in, benefits of, and right to be free from discrimination in a covered health program or activity.

151.    Plaintiffs and the members of the proposed class have been and continue to be injured by Anthem's administration, application, and enforcement of the Obesity Exclusion and they are entitled to reprocessing of all claims wrongfully denied and all medical expenses never submitted for consideration to Anthem as a result of the Exclusion.

28

152.    Without reprocessing, declaratory, and prospective injunctive relief from Anthem's ongoing, discriminatory actions, Plaintiffs and proposed class members have suffered and will continue to suffer, irreparable harm.

## DEMAND FOR RELIEF

WHEREFORE, Holland requests that this Court:

1.    Certify this case as a class action; designate Holland as class representative; and designate Eleanor Hamburger and Richard E. Spoonemore of SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC, and Shelby Leighton of PUBLIC JUSTICE as Class Counsel;

2.    Enter judgment on behalf of Plaintiff and the class due to Anthem's discrimination on the basis of disability under Section 1557 of the Affordable Care Act;

3.    Declare that Anthem violated the rights of Holland and the members of the proposed class under Section 1557 of the ACA, when it designed, issued, delivered and/or administered the Obesity Exclusion in their health plans;

4.    Enjoin Anthem from applying the Obesity Exclusion now and in the future to claims from Holland and the proposed class;

5.    Require Anthem, its agents, employees, successors, and all others acting in concert with them to reprocess and, when medically necessary and meeting the other terms and conditions under the relevant plans, provide coverage (payment) for all denied pre-authorizations and denied claims for coverage of prescription medications to treat obesity during the class period;

6.    Enter judgment in favor of the named Plaintiff and the Plaintiff class designed to fully compensate Plaintiff and the class for the harm suffered due to Anthem's conduct in violation of Section 1557 of the Affordable Care Act, including but not limited to nominal damages;

7.    Award reasonable attorney fees, costs, and expenses; and

8.    Award such other and further relief as is just and proper.

DATED:                                        **PUBLIC JUSTICE**

                                              */s/ Shelby Leighton*
                                              Shelby Leighton (ME Bar #6228)
                                              sleighton@publicjustice.net
                                              1620 L St. NW, Suite 630
                                              Washington, DC 20036
                                              Tel. (202) 797-8600
                                              Fax (202) 232-7203

                                              **SIRIANNI YOUTZ**
                                              **SPOONEMORE HAMBURGER PLLC**
                                              Eleanor Hamburger (WSBA #26478)*
                                              Richard E. Spoonemore (WSBA #21833)*
                                              ehamburger@sylaw.com
                                              rspoonemore@sylaw.com
                                              3101 Western Avenue, Suite 350
                                              Seattle, WA 98121
                                              Tel. (206) 223-0303; Fax (206) 223-0246

                                              * Application for admission *pro hac vice*
                                              forthcoming

                                              **Attorneys for Plaintiff and the Proposed Classes**