# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| REBECCA HOLLAND, on her own behalf and on behalf of those similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ELEVANCE HEALTH, INC., f/k/a ANTHEM, INC.,<br><br>　　　　　Defendant. | Case No. 2:24-cv-00332-LEW<br><br>Honorable Lance E. Walker |

## DEFENDANT ELEVANCE HEALTH, INC.'S MOTION TO DISMISS COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant Elevance Health Inc., f/k/a Anthem, Inc. (hereinafter "Elevance"), by and through undersigned counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, moves to dismiss the Complaint of Plaintiff Rebecca Holland ("Plaintiff") for failure to state a claim upon which relief can be granted.

## INTRODUCTION

In her putative class action Complaint, Plaintiff alleges that Elevance unlawfully discriminated against her because the benefit design of her health benefit plan ("Plan"), which she voluntarily chose to enroll in, excludes coverage for weight loss medications. Plaintiff is enrolled in a health plan insured by Anthem Health Plans of Maine, Inc. d/b/a Anthem Blue Cross and Blue Shield ("Anthem"). Specifically, Plaintiff asserts that obesity is a federally protected disability and that her Plan's exclusion of weight loss medications violates the anti-discrimination protections of Section 1557 of the Patient Protection and Affordable Care Act of 2010 (the "ACA").

Plaintiff's discrimination claim, however, rests on the overarching but fundamentally flawed assumption that such exclusion is discriminatory merely because it may have an impact on those with additional medical needs, notwithstanding that it applies equally to those who would fall within Plaintiff's (incorrect) definition of disabled and those who do not. The United States Supreme Court, however, has explicitly rejected such a "boundless notion." To the contrary, Section 1557's anti-discrimination protections *do not* guarantee those with alleged disabilities greater access but instead require "evenhanded treatment and the opportunity for handicapped individuals to participate in and benefit from programs receiving federal assistance." *See Alexander v. Choate*, 469 U.S. 287, 299-303 (1985). In this case, Plaintiff was not denied access to a benefit that the Plan offers. In fact, Plaintiff admits that the challenged exclusion in her Plan

applies across the board – to the disabled and non-disabled alike.[1] Nor is Anthem required under the ACA to provide Plaintiff with greater coverage for prescription drug benefits than it provides others. *See Alexander* 469 U.S. at 309 ("The State has made the same benefit . . . equally accessible to both handicapped and nonhandicapped persons, and the State is not required to assure the handicapped 'adequate health care' by providing them with more coverage than the nonhandicapped.") But that is exactly what Plaintiff is attempting to compel Anthem to do -- which is why her ACA claim is misplaced and should be dismissed.

Overreaching aside, as an initial and more fundamental problem, Plaintiff fails to plead the components of a Section 1557 disability discrimination claim for at least two reasons. *First*, the Complaint contains no facts plausibly suggesting that Plaintiff suffers from a disability. Plaintiff's discrimination claim rests on the erroneous premise that obesity, standing alone, is a federally protected disability, but multiple courts have rejected this exact proposition. These courts hold that obesity is not considered a disability unless it is the result of a distinct underlying physiological disorder, which Plaintiff does not allege. Moreover, the Complaint is devoid of any non-conclusory, factual allegations that Plaintiff suffers from an impairment that substantially limits any major life activity.

*Second*, Plaintiff fails to plausibly allege that she was discriminated against solely by reason of her disability. Plaintiff alleges three types of discrimination – intentional, proxy (a form of intentional discrimination), and disparate impact – but each is deficient. Plaintiff's intentional discrimination claim fails because, as she acknowledges, the Plan's exclusion of weight loss

---

[1]  Notably, the Centers for Medicare and Medicaid Services ("CMS") also excludes from its Part D coverage weight loss medications "[a]gents when used for anorexia, weight loss, or weight gain (even if used for a non-cosmetic purpose (i.e., morbid obesity)). *See* Medicare Prescription Drug Benefit Manual Chapter 6 – Part D Drugs and Formulary Requirements, Section 20, attached hereto as Ex. 1.

medications applies to individuals who are overweight and not disabled and those who are obese. Plaintiff's proxy and disparate impact theories of discrimination are likewise deficient because Plaintiff does not allege facts that show how the challenged exclusion disproportionately impacts individuals with obesity. Even assuming obesity is a protected class – and it is not – Plaintiff fails to plausibly explain why or how weight loss is a proxy for obesity. In fact, the Complaint is devoid of any facts shedding light on what portion of those affected by the exclusion are disabled within the meaning of the ACA. Without these essential facts, Plaintiff's proxy and disparate impact theories fail.

## PLAINTIFF'S ALLEGATIONS AND PLAN TERMS

### I. The Plan Excludes Drugs Mainly Used for Weight Loss For All Members Whether Obese or Not.

Plaintiff Rebecca Holland, an employee of the Falmouth Public School District, has health benefits through the Maine Education Association Benefits Trust ("MEABT"). Compl. ¶ 35. The Plan is fully insured, meaning that Anthem insures only covered medical and prescription drug expenses. Compl. ¶ 12, Ex. 1.

The Plan in turn sets the terms for when Anthem will cover and make payment for prescription drugs. *See* Compl., Ex. 1. at 69-77. When a member's benefit plan covers prescription weight loss drugs like semaglutide (Wegovy) and tirzepatide (Zepbound), Anthem's prescription drug benefit policies, including its Prior-Authorization Criteria, set forth the criteria for coverage. *See* Compl., Ex. 1. at 71-72. For example, Wegovy (semaglutide) may be approved for chronic weight management for adults with a BMI[2] of 30 kg/m2 or greater; or those with a BMI of greater

---

[2] For adults, the conditions of overweight and obesity are commonly identified by body mass index ("BMI") of 25-29.9 for overweight, and 30 and above for obesity. *See* Connor B. Weir; Arif Jan., BMI Classification Percentile And Cut Off Points, National Institute of Health, https://www.ncbi.nlm.nih.gov/books/NBK541070/ (last visited Oct. 15, 2024); Compl. ¶¶ 55, 56.

than or equal to 27 kg/m2 and at least one of the following weight-related comorbid conditions: (1) Hypertension; (2) Type II Diabetes Mellitus; and (3) Dyslipidemia. *See* Ex. 2.[3] Zepbound may be approved for weight management for adults who have a BMI of greater than or equal to 27 kg/m2 and at least one weight-related comorbid condition, such as hypertension or diabetes. Ex. 3. Thus, if an employer (like the MEABT) chooses to pay the premium associated with covering Wegovy for weight loss, Anthem provides that benefit assuming the prior-authorization criteria are met.

The Plan's Prescription Drug Benefits for weight loss drugs, however, do not cover "[a]ny drug mainly used for weight loss." Compl. Ex. 1, p. 86. The Complaint characterizes this provision as excluding "all coverage for prescription medications to treat obesity" and characterizes it the "Obesity Exclusion" but this characterization is misleading because the exclusion does not reference obesity or any other medical condition. Compl. ¶¶ 2, 4.[4] Plaintiff claims that this exclusion unlawfully discriminates against her and all individuals diagnosed with obesity. Compl. ¶ 5. However, Plaintiff admits that the exclusion also applies to overweight Plan members who – even under Plaintiff's flawed definition of disability – do not have a disability. *Id*. ¶ 52.

---

[3] This Court may consider Anthem's Prior-Authorization Criteria in connection with this motion to dismiss. On a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint, but also "documents the authenticity of which are not disputed by the parties . . . [and] documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint," even when the documents are incorporated into the moving party's pleadings. *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007*); Beddall v. State Street Bank and Trust Co*., 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document [offered by the movant] (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it . . . ." (*citing Fudge v. Penthouse Int'l, Ltd*., 840 F.2d 1012, 1015 (1st Cir. 1988)). Here, Anthem's Prior Authorization Criteria are referenced in the Plan, *see* Complaint Ex. 1 at 71-72, and are also referenced in the Complaint, even if not by name, because Plaintiff alleges that Anthem covers weight loss medication in some of its health plans. *See* Comp. ¶ 4.

[4] The Plan's medical benefits cover treatment for morbid obesity. Benefits are limited to surgery for an intestinal bypass, gastric bypass, or gastroplasty. Compl. Ex. 1 at 65.

## II.    Coverage Was Denied for Wegovy Because It Is Not Covered Under Plaintiff's Plan.

According to the Complaint, since at least 2022, Plaintiff has had a diagnosis of obesity and a documented history of a BMI over 30 since at least 2013. Plaintiff alleges that a licensed health professional diagnosed her with obesity and that she was prescribed Wegovy. Compl. ¶¶ 110-111. She does not plead any other facts about the underlying cause of her obesity diagnosis. She claims only that her obesity has resulted in sleep apnea, numerous foot, shoulder, and other musculoskeletal injuries and that it "substantially limits the major life activities of walking, standing, and sleeping." *Id.* ¶ 108. Coverage for Wegovy was denied in September 2022. *Id.*

## III.    Plaintiff Filed Suit Challenging The Plan's Weight Loss Drug Exclusion.

Plaintiff alleges that Anthem designed the Plan's prescription weight loss drug exclusion and that this exclusion violates the ACA's prohibition against disability-based discrimination. *Id.* ¶148. Although Plaintiff admits that the exclusion applies equally to overweight participants who do not have a disability (*id.* ¶52), she nevertheless alleges that Anthem "intentionally" designed this exclusion to "target" and single out individuals with obesity and deny them medically necessary prescription drug treatment on the basis of their alleged disability. *Id.* ¶¶ 77, 82. Plaintiff further alleges that "weight loss" is a proxy for obesity and therefore the exclusion is discriminatory "because it targets disabled enrollees who seek medically necessary weight loss treatment for their disability of obesity." *Id.* ¶ 95.  Lastly, Plaintiff alleges that the exclusion disproportionately impacts individuals with obesity. *Id.* ¶ 96.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must include factual allegations that, if proven true, demonstrate a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–58 (2007). "[T]he plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully." *Boroian v. Mueller*, 616 F.3d 60, 65 (1st Cir.

2010). Couching legal conclusions as allegations is not enough, and the complaint "must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." *Feliciano-Hernández v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011).

## ARGUMENT

### I.  Elevance is not a Proper Defendant in This Case.

As noted above, the Plan was issued by Anthem, not Elevance.  See Compl, Ex. 1 & ¶ 40. Elevance is a holding company and a legally separate entity from Anthem.  It is a well-settled general principle of corporate law, that a parent corporation is not liable for the alleged acts of its subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Thus, Elevance is not properly named as the defendant in this case and the Complaint should be dismissed.

### II.  The ACA Addresses Disability Discrimination Using the Rehabilitation Act's Standard.

Plaintiff's sole cause of action alleges that Anthem's design of the Plan's prescription drug benefits discriminated against her based on her purported disability and, therefore, Anthem violated section 1557 of the ACA.  Section 1557 of the ACA provides as follows:

> [A]n individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 … title IX of the Education Amendments of 1972 … the Age Discrimination Act of 1975 … or section 504 of the Rehabilitation Act of 1973 …be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity ….

42 U.S.C. § 18116(a). By its plain text, Section 1557 of the ACA forbids discrimination "on the ground prohibited" by Section 504 or other nondiscrimination statutes and directs that each statute's enforcement mechanism "shall apply." *Id*. The text thus establishes that Section 1557 incorporates Section 504's standard as to disability discrimination claims. In other words, given Plaintiff's claim in this case, analysis of her ACA claim is governed by the Rehabilitation Act's

framework. *See Se. Pa. Transp. Auth. v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 698-99 (E.D. Pa. 2015); *see also Briscoe v. Health Care Serv. Corp.*, No. 16-cv-10294, 2017 WL 5989727, at *10 (N.D. Ill. Dec. 4, 2017)(explaining in sex discrimination context that section 1557 "unambiguously demonstrate[s] Congress's intent to import the various different standards and burdens of proof into a Section 1557 claim" (internal quotation marks and citations omitted)); *see also Espino v. Regents of the Univ. of Cal.*, 666 F. Supp. 3d 1065, 1088 (C.D. Cal. 2023) (same).

Section 504 of the Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Thus, to state a claim for disability discrimination under section 504 of the Rehabilitation Act, Plaintiff must allege sufficient facts to show that "(1) [s]he is an individual with a disability; (2) [s]he is otherwise qualified to receive a certain benefit; (3) [s]he was denied the benefits of a certain program *solely* by reason of [her] disability; and (4) the program receives federal financial assistance." *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 241 (6th Cir. 2019) (emphasis added); *see also Lewis v. Spurwink Servs., Inc.*, 2022 WL 17454078, at *3 (D. Me. Dec. 6, 2022)).

Section 504 incorporates the definition of disability in the Americans with Disabilities Act ("ADA"). *See* 29 U.S.C. 705(9).[5] To meet this definition, an individual must show (1) a physical or mental impairment; (2) that "substantially limits" a "major life activity." *Carroll v. Xerox Corp.*,

---

[5] Case law "construing the ADA generally pertains equally to claims under the Rehabilitation Act." *Kelley v. Mayhew*, 973 F. Supp. 2d 31, 35 n.2 (D. Me. 2013) (quoting *Calero-Cerezo v. U.S. Dep't of Just.*, 355 F.3d 6, 19 (1st Cir. 2004)).

294 F.3d 231, 238 (1st Cir. 2002).[6] The determination of whether a plaintiff has a disability is individualized, in that it must be made on a case-by-case basis. *Calero-Cerezo*, 355 F.3d at 20.

Here, Plaintiff fails to plead the facts necessary to satisfy the required elements of her ACA disability claim and instead, summarily asserts that all persons who are obese are of necessity disabled.

## III. Plaintiff Fails to Allege Facts Plausibly Suggesting That She has a Disability.

Plaintiff fails to plausibly allege that she is an individual with a disability. Plaintiff's disability discrimination claim rests on the faulty and untenable premise that she and all individuals diagnosed with obesity are disabled. Compl. ¶¶ 41, 47, 51. Such a bald assertion, however, is insufficient to establish that Plaintiff has a federally protected disability because, as multiple courts have held, a physical impairment, *i.e.*, a disability, must result from an underlying physiological disorder or condition. Plaintiff alleges no such facts here.

### A. Obesity is Not a Physical Impairment Unless Caused by an Underlying Physiological Disorder.

Several federal appellate courts have addressed whether obesity is a physical impairment. These courts have found that a plaintiff must show that an underlying physiological disorder caused their obesity for it to meet the definition of physical impairment. *See Richardson v. Chicago Transit Auth.,* 926 F.3d 881, 892-893 (7th Cir. 2019) (joining the "Second, Sixth, and Eighth Circuits" holding that "obesity is an ADA impairment only if it is the result of an underlying 'physiological disorder or condition'"); *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1108 (8th Cir. 2016) (holding that "an individual's weight is generally a physical characteristic that qualifies as

---

[6] EEOC regulations define "physical or mental impairment" as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630(2)(h)(1).

a physical impairment only if it falls outside the normal range and it occurs as the result of a physiological disorder"); *Andrews v. State of Ohio*, 104 F.3d 803, 809–10 (6th Cir. 1997) (same); *Francis v. City of Meriden*, 129 F.3d 281, 286 (2d Cir. 1997) ("[Plaintiff]'s claim fails because obesity, except in special cases where the obesity relates to a physiological disorder, is not a 'physical impairment' within the meaning of the statutes."). Multiple district courts considering this issue have reached the same conclusion. *McCarthy v. Mass. Gen. Brigham Inc*., No. 24-cv-10184-DJC, 2024 U.S. Dist. LEXIS 123886, at *8 (D. Mass. July 15, 2024) (holding that for obesity to qualify as a physical impairment--and thus a disability—under the ADA, it must result from an underlying physiological disorder or condition.); *López Santiago v. Med Centro, Inc.,* 2023 WL 8809479, at *3 (D.P.R. Dec. 20, 2023) ("In the absence of any clear indication in the ADA that Congress intended the definition of 'impairment' to include physical characteristics not caused by a physiological condition or disorder, the court will not extend the ADA in this manner."); *Michaels v. Cont'l Reality Corp*., 2011 U.S. Dist. LEXIS 109172, 2011 WL 4479697, *3 (D. Md. Sept. 26, 2011)("[S]imply being overweight or obese has generally not been viewed as constituting a disability"); *Brownwood v. Wells Trucking LLC*, No. 16-cv-01264-PAB-NYW, 2017 U.S. Dist. LEXIS 223011, at *12 (D. Colo. Nov. 9, 2017) ("[T]he Court is persuaded by the conclusion reached by a majority of courts that obesity — even severe or morbid obesity — does not qualify as an impairment without evidence of a physiological cause."); *Sturgill v. Norfolk S. Ry. Co., 391 F. Supp. 3d 598, 603 (E.D. Va. 2019)* (same).

In the face of this precedent, the Complaint cites to only one case decided more than 30 years ago, *Cook v. Dep't of Mental Health, Retardation, & Hosps.*, 10 F.3d 17, 21 (1st Cir. 1993), as support for the allegation that Plaintiff and all individuals who are diagnosed with obesity and are prescribed weight loss drugs are "qualified individuals with disabilities." Compl. ¶ 22. To the

contrary, *Cook* does not stand for such a broad proposition. In *Cook,* the First Circuit upheld the jury's conclusion that a woman with morbid obesity was rejected for the position of residential care facility attendant on the basis of a *perceived* substantial impairment – an entirely different prong of the ADA that is not relevant here. *Cook*, 10 F.3d at 25. More importantly, the First Circuit relied on expert medical testimony provided at trial that the plaintiff's *morbid* obesity resulted from a dysfunctional metabolic system and neurological appetite-suppressing signal system – both underlying physiological conditions. *Id*. at 23. Here, in contrast, Plaintiff alleges no facts that her obesity is the result of an underlying physiological or neurological condition. Moreover, the First Circuit is clear that "[e]vidence of a medical diagnosis of impairment, standing alone, is insufficient to prove a disability." *Ramos-Echevarria v. Pichis, Inc.*, 659 F.3d 182, 187 (1st Cir. 2011); *see also Pérez v. Saint John's School*, 814 F.Supp.2d 102, 117 (D.P.R. 2011) (noting that an impairment based only on a medical diagnosis or conclusory assertions by a physician are insufficient to show a disability for purposes of the ADA). Here, Plaintiff's alleged claim of disability rests solely on an alleged medical diagnosis of obesity; nothing more. That is simply not enough.

**B.      Plaintiff Fails to Allege an Impairment that Substantially Limits a Major Life Activity.**

Plaintiff also fails to sufficiently allege that she has a physical impairment that substantially limits major life activities because her allegations about her obesity lack factual specificity. Plaintiff alleges that she was diagnosed with obesity and that her obesity "substantially limits the major life activities of walking, standing, and sleeping."  Compl. ¶ 107. These are conclusory allegations, however. *Mancini v. City of Providence*, 909 F.3d 32, 44 (1st Cir. 2018) ("It does not suffice merely to allege in a wholly conclusory fashion, without any further details or supporting documentation, that an impairment substantially limits one's major life activities.")  Plaintiff must

offer "factual specificity" to establish the limitations to a major life activity, such as describing their symptoms and "when they occur," "how often the symptoms occur," and "how long they last when they do occur." *Davis v. New York*, 2023 WL 10351576, at \*4 (W.D.N.Y. Dec. 20, 2023) (dismissing ADA discrimination claim where Plaintiff alleged her condition limited her ability to breathe, but not how it did so); *Lee v. Delta Air Lines Inc*., No. CV 20-8754-CBM-(JEMx), 2021 U.S. Dist. LEXIS 227535, at \*13 (C.D. Cal. June 2, 2021) (dismissing ADA discrimination claim because "[w]hile the FAC alleges Plaintiff has a 'mobility impairment' disability, 'was unable to walk up stairs' and suffers from 'depression/anxiety/PTSD.. . .'" the FAC failed to allege nonconclusory facts regarding how Plaintiff's mobility impairment, depression, anxiety or PTSD limited major life activities.); *Shine v. N.Y.C. Hous. Auth.*, 2020 WL 5604048, at \*6 (S.D.N.Y. 2020) (dismissing ADA discrimination claim where Plaintiff alleged that, among other things, she experienced "trouble sleeping" and "trouble breathing at night"). As noted above, a diagnosis alone is not enough to establish an impairment that substantially limits a major life activity. *Carreras v. Sajo, Garcia & Partners*, 596 F.3d 25, 33 (1st Cir. 2010).

Because Plaintiff alleges nothing more than conclusory allegations, her Complaint fails to state a claim and should be dismissed. *See Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 37 (1st Cir. 2011) (finding "[m]ere broad conclusory allegations" are not a sufficient "substitute for a meaningful factual context" and dismissed complaint for failure to state a claim).

## IV.  Plaintiff Has Not Sufficiently Pled Discrimination.

Plaintiff alleges that Anthem's design and administration of the Plan exclusion constitutes (1) intentional discrimination; (2) proxy discrimination; and/or (3) disparate impact discrimination against individuals with obesity. None of these theories are sufficient to withstand a motion to dismiss.

**A.     Plaintiff Has Not Stated a Claim for Intentional Discrimination.**

Plaintiff's intentional discrimination claim fails because she does not plausibly allege that she was denied benefits or was subjected to differential treatment "solely by reason of" her obesity. Here, despite alleging that Anthem intentionally designed the Plan to "target and exclude" the prescription medications needed by obese members, she admits that the challenged exclusion applies to both disabled and non-disabled individuals alike. She further admits that Anthem covers weight loss medications in other plans. Compl. ¶¶ 4, 52, 77. These allegations are fatal to her intentional discrimination claim. *See Bush v. Wang Ctr. For the Performing Arts, Inc.*, No. 22-10473-NMG, 2022 U.S. Dist. LEXIS 228636, at *21 (D. Mass. Oct. 31, 2022) ("Because the challenged policies apply equally to disabled and non-disabled individuals, Bush has not alleged any facts supporting a facial theory of intentional discrimination."); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1116 (N.D. Cal. 2011) (dismissing Plaintiff's intentional disability discrimination claim despite Plaintiff's allegations that Facebook's customer service system was particularly difficult for her to use because of her bipolar disorder. The court held that Plaintiff failed to allege differential treatment because of her disability where the Complaint established "that Facebook's account management and customer service systems treat all users in the same cold, automated way."); *Doe*, 926 F.3d at 241 (rejecting the plaintiff's claim that Blue Cross intentionally discriminated against him on the basis of disability – his HIV positive status – by requiring him, and anyone else who used certain drugs, to obtain the medicines from a specialty pharmacy where the medications affected by the specified pharmacy requirement were apt to be used by those with disabilities and by those without disabilities alike.)  Thus, even assuming that Plaintiff falls into a protected class – and she does not – she fails to plausibly allege that she was subjected to discrimination "solely by reason" of an alleged disability.

Plaintiff also attempts to plead discriminatory intent by alleging on information and belief that Anthem failed to "consider whether the Obesity Exclusion in the health plans it insured and administered resulted from historic discrimination and prejudice, even when Anthem evaluated whether its benefit design practices complied with the non-discrimination requirements in the ACA." Compl. ¶ 85.[7] Although not specifically identified as such in the Complaint, Plaintiff appears to be attempting to allege discriminatory intent based on a "deliberate indifference" theory. Although the First Circuit has not weighed in on the issue, some district courts in this jurisdiction have held that discriminatory intent claims may be shown by alleging "deliberate indifference." *See Lewis*, 2022 WL 17454078, at *6; *Fortin on behalf of TF v. Hollis Sch. Dist.*, 2017 WL 4157065, at *3 (D.N.H. Sept. 18, 2017). Deliberate indifference in this context requires: (1) "knowledge that a harm to a federally protected right is substantially likely," and (2) the defendant "failed to act upon that likelihood." *Walgreens*, 2024 WL 20063, at *2; *Lewis*, 2022 WL 17454078, at *6. Plaintiff's allegations do not satisfy either requirement.

Plaintiff has not alleged that Anthem knew that obesity is a federally-protected disability. As discussed above, the great wealth of case authority holds that obesity standing alone does not qualify as a recognized disability under federal law. *See, e.*g., *Richardson*, 926 F.3d at 892-893; *McCarthy*, 2024 U.S. Dist. LEXIS 123886, at *8. Thus, any suggestion that Anthem should have known that obesity was a federally protected class under such circumstances defies all logic and the law.

Nor does Plaintiff plausibly allege that Anthem should have known it was "substantially

---

[7] Plaintiff cites *Schmitt v. Kaiser Found. Health Plan of Wash*., 965 F.3d 945 (9th Cir. 2020), in which the Ninth Circuit held that the ACA allows a claim for discriminatory benefit design. Id. at 955. Compl. ¶ 71. Although the court noted in passing that intentional discrimination can be shown by deliberate indifference or discriminatory animus, it did not address whether Kaiser was deliberately indifferent in applying the exclusion at issue. More importantly, the court found that the plaintiffs "alleged no facts giving rise to an inference of intentional discrimination besides the exclusion itself." *Id*.

likely" to violate the ACA's non-discrimination provisions. Here, Plaintiff alleges only that Anthem failed to consider whether its benefit design "resulted from historic discrimination and prejudice," but this vague and conclusory allegation is made on information and belief and is far too general to plead deliberate indifference. *See Walgreens*, 2024 WL 20063, at *2 (finding that allegations that Walgreens received complaints about potential disability discrimination were too general to sufficiently plead deliberate indifference); *Dunn v. City of Los Angeles*, 2017 WL 7726724, at *2 n.5 (C.D. Cal. Aug. 10, 2017) (court found individual plaintiffs failed to sufficiently plead intentional discrimination or deliberate indifference and failed to allege non-conclusory facts, finding that "conclusory allegations made upon 'information and belief' are insufficient to state a claim"); *see also Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 86 (1st Cir. 2015) (recognizing the distinction between conclusory or "bald" allegations that should not be taken as true, and factual allegations that should be taken as true).

### B.    Plaintiff Has Not Stated a Claim for Proxy Discrimination.

Plaintiff fails to allege facts to demonstrate that the Plan's exclusion for prescription weight loss medications is a form of proxy discrimination against people who are obese. Proxy discrimination "arises when the defendant enacts a law or policy that treats individuals differently on the basis of seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group." *Pac. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013). Put another way, a proxy discrimination claim addresses the use of "a technically neutral classification as a proxy to evade the prohibition of intentional discrimination." *McWright v. Alexander*, 982 F.2d 222, 228 (7th Cir. 1992). Here, the Plan does not treat any individuals differently, but even if it did, Plaintiff fails to sufficiently allege that the purported proxy classification matches the protected class closely enough that the Court can infer intentional

discrimination. *Schmitt*, 965 F.3d at 959 (citing *Davis v. Guam*, 932 F.3d 822, 838 (9th Cir. 2019) ("the crucial question is whether the proxy's 'fit' is 'sufficiently close' to make a discriminatory inference plausible")).

Courts have adopted stringent requirements for the closeness of the "fit" between classification and class necessary to infer discriminatory intent. *See, e.g.*, *Community Services, Inc. v. Wind Gap Municipal Authority*, 421 F.3d 171 (3d Cir. 2005) (holding that the "fit" between a facially neutral classification and a protected class is not "inextricably linked," in the absence of some evidence of discriminatory intent beyond the language of the challenged policy.); *Pacific Shores*, 730 F.3d at 1160, n.23 (holding that the facially neutral criteria must be "almost exclusively indicators of membership in the disfavored group.").

When evaluating whether the proxy's 'fit' is 'sufficiently close' in the context of an alleged discriminatory plan design, the court may look at "a given policy's disproportionate effect on disabled insureds (overinclusion), ability to service the needs of similar disabled insureds (underinclusion), historical enactment, or targeted enforcement." *E.S. v. Regence BlueShield*, 2022 WL 279028, at *4 (W.D. Wash. Jan. 31, 2022). At a minimum, a plaintiff must support such allegations with facts, not conclusions, to survive a motion to dismiss. *Id*. at *9–10. The Complaint does not do so here.

In this case, Plaintiff alleges that the exclusion of prescription medications related to "weight loss," is also a proxy for discrimination against enrollees diagnosed with obesity. Compl. ¶ 50. Plaintiff, however, has not pled any facts that the prescription weight loss drug exclusion disproportionately affects members with obesity (*i.e.* overinclusion). The Complaint does not include any allegations about the population of overweight plan participants who are eligible for prescription weight loss drug coverage, the percentage who are prescribed weight loss drugs, the

percentage who seek coverage for prescription weight loss drugs, or how these factors compare to the needs and demand of the population of individuals diagnosed with obesity. Such deficiencies are fatal to Plaintiff's proxy discrimination claim. *See Regence BlueShield*, 2022 WL 279028, at *7–9 (rejecting proxy discrimination claim where plaintiff did not identify the total hearing loss population, the proportion of that population that was disabled and eligible for cochlear implants, the proportion that was disabled but ineligible for cochlear implants, or the proportion that was not disabled); *Walgreens*, 2024 WL 20063, at *1 (finding plaintiff failed to state claim for proxy discrimination because plaintiff did not allege facts about the proportion of people who would not be affected by the policy); *Schmitt*, 965 F.3d at 959–60 (same).[8]

Plaintiff attempts to plead a disproportionate impact on individuals diagnosed with obesity by alleging that "[w]hile some non-disabled enrollees may seek weight loss medications for treatment, such treatment is not considered medically necessary under Anthem's existing medical policy." Compl. ¶ 98. But courts have found this same allegation to be conclusory and insufficient. *See Regence BlueShield*, 2022 WL 279028, at *7–9 (rejecting conclusory allegations that "even if non-disabled insureds did indeed seek treatment, they would be denied coverage because such treatment would not be a 'medical necessity' and Regence's policy excludes treatments that are not medically necessary").

Moreover, Plaintiff's disproportionate impact theory is illogical and contradictory. While Plaintiff insists that the exclusion singles out disabled members, she also admits that the exclusion applies to overweight members, who Plaintiff admits are not disabled. Compl. ¶ 52. Plaintiff

---

[8] Plaintiff cites *Fuog v. CVS Pharmacy, Inc.*, 2022 WL 1473707 (D.R.I. May 10, 2022) ("*Fuog II*"), as support for the proxy discrimination claim. But the plaintiff in *Fuog* II alleged a "fit" by "support[ing] her pleading with reference to academic studies showing a reasonably strong correlation between disability and larger opioid prescriptions." *Id.* at *5. Plaintiff has not cited any study or information to show an analogous similar correlation here, and therefore *Fuog II* is distinguishable.

further muddies the water by admitting that "not everyone with BMI over 30 will be diagnosed with obesity . . . and sometimes people with lower BMI may be diagnosed with obesity[.]" *Id.* ¶ 56. Moreover, Plaintiff acknowledges that some Anthem plans provide coverage for weight loss drugs, but her chosen Plan does not. *Id.* ¶4. None of these allegations are consistent with Plaintiff's disproportionate impact theory. Indeed, and as shown above, when a plan provides coverage for weight loss medications such as Wegovy and Zepbound, both overweight and obese individuals can meet Anthem's coverage criteria for such drugs. See Ex. 2.

Plaintiff's proxy discrimination claim also fails because the "weight loss" proxy is underinclusive. The Plan provides medical benefits for medical and surgical interventions for morbid obesity. Courts have recognized that just as "the benefit . . . cannot be defined in a way that effectively denies otherwise qualified disabled individuals the meaningful access to which they are entitled . . . a section 1557 plaintiff cannot define the benefit so narrowly as to require an insurer to curate coverage for each individual's health care needs." *Schmitt*, 965 F.3d at 955, 959 (explaining the ACA "does not guarantee individually tailored health care plans"); *Alexander*, 469 U.S. at 303 (explaining "Medicaid programs" "do not guarantee that each recipient will receive that level of health care precisely tailored to his or her particular needs"). Here, Plaintiff has alleged no facts about what percentage of plan members would seek coverage for medical or surgical treatments as opposed to prescription drugs, or if this Plan design serves the needs of those members. Instead, "[w]e are left to guess what that proportion might be," which is enough to merit dismissal. *Schmitt*, 965 F.3d at 959.

In short, Plaintiff has not alleged that the facially neutral provision (the prescription drug weight loss exclusion) is "so closely" drawn with the alleged disfavored group (plan members diagnosed with obesity) that Anthem is engaged in "constructively[] facial discrimination[.]" Thus,

Plaintiff has not adequately pled proxy discrimination. *See Schmitt* at 958, 960 (finding similarly deficient allegations failed to state claims for proxy discrimination).

### C. Plaintiff Has Not Stated a Claim for Disparate Impact Discrimination.

Plaintiff fails to allege a claim for disparate impact discrimination because, even assuming such a theory is cognizable at all, the exclusion denies everyone access to prescription weight loss drugs regardless of their disability status. Here, Plaintiff alleges that even if the exclusion is facially neutral, it "denies enrollees diagnosed with obesity 'meaningful access' to the prescription medication benefit and to the administrative appeal and external review process." Compl. ¶ 96. Plaintiff's "meaningful access" theory of discrimination is unavailing.

The United State Supreme Court in *Alexander* considered whether a disparate impact claim could be maintained under section 504 of the Rehabilitation Act. It "assume[d] without deciding that [section] 504 [of the Rehabilitation Act] reaches at least some conduct that has an unjustifiable disparate impact upon the handicapped[.]" But even then, the Court cautioned against the "boundless" liability under the Rehabilitation Act that it found "troubling" if courts were to accept improperly expansive disparate-impact theories. *Alexander*, 469 U.S. at 298-99. As the Court explained, the Rehabilitation Act does not "guarantee the handicapped equal results," but instead requires "evenhanded treatment and the opportunity for handicapped individuals to participate in and benefit from programs receiving federal assistance." *Alexander*, 469 U.S. at 304. Thus, the *Alexander* court concluded that a disabled individual need only be provided with "meaningful access to the benefit that the grantee offers." *Id*. at 301.

Several federal appellate courts, including the First Circuit, have suggested that a disparate impact claim can be maintained under Section 504 under narrow circumstances. In *Ruskai v. Pistole*, 775 F.3d 61, 77-78 (1st Cir. 2014), the First Circuit addressed the meaningful access standard articulated by *Alexander* and agreed that proof of discriminatory animus is not always

required in an action under section 504, citing by way of illustration the "classic claim that an architectural barrier denies a disabled person meaningful access to a public facility." *Id*. at 77. Citing *Alexander*, the First Circuit noted that the primary target of section 504 is the situation in which persons with disabilities are denied meaningful access to a program or benefit that is available to others. *Id*. It concluded, however, that because the challenged policy (there, TSA screening procedures) affected everyone, *i.e.*, all travelers, Plaintiff was not denied access to a government benefit, service, activity, or program. *Id*. at 78.

The Sixth Circuit, notably and from another perspective, held that the Rehabilitation Act does not permit disparate impact claims because they are wholly incompatible with the plain text of the Rehabilitation Act, which prohibits discrimination "solely by reason of her or his disability." *Doe*, 926 F.3d at 242. As the *Doe* court explained, "[d]isparate-impact discrimination occurs when an entity acts for a nondiscriminatory reason but nevertheless disproportionately harms a protected group." *Id*. But, because Section 504 requires that the denial of benefits or discrimination be "solely" by reason of the plaintiff's disability, the court concluded its language "does not encompass actions taken for nondiscriminatory reasons." *Id*. The court went on to conclude:

> The language, as well, applies only to individuals who are "otherwise qualified" for the program at issue, meaning that the Act allows the disabled to be "disparately affected by legitimate job criteria." *Crocker v. Runyon*, 207 F.3d 314, 321 (6th Cir. 2000). All of this explains why we have remarked that "[t]here is good reason to believe that a disparate impact theory is not available under the Rehabilitation Act." *Id*. We agree, and so hold.

*Doe*, 926 F.3d at 242.

Anthem acknowledges that the Sixth Circuit's holding diverges from the First Circuit's embrace of a narrowly-applied disparate impact theory for section 504 claims, but submits that the Sixth's Circuit's approach is more aligned with the plain and unambiguous text of the statute. But even under a "meaningful access" standard adopted by the First Circuit, Plaintiff's disparate

impact claim still falls short because the Plan excludes weight loss medications across the board regardless of the member's disability status. Where a policy "applies to everyone, regardless of their disability status" as the prescription drug weight loss exclusion does here, the "alleged policy does not deny people with a disability meaningful access to a service that remains open and easily accessible to others." *Walgreens*, 2024 WL 20063, at *2 (holding that Section 504 may support a disparate impact claim based on lack of meaningful access but only when the policy "has the effect of denying meaningful access to services to people with disabilities, but the 'services . . . remain open and easily accessible to others.'"); *Ruskai* (similar). By contrast, Plaintiff attempts to turn the meaningful access theory on its head by seeking coverage for prescription weight loss medications not offered to anyone else. As the Supreme Court made clear in *Alexander*, however, "meaningful access" does not require Anthem to "assure the [disabled] 'adequate health care' by providing them with more coverage than the [non-disabled]." 469 U.S. at 309.

Moreover, Plaintiff's disparate impact claim is completely devoid of factual support. Indeed, to state a disparate impact claim Plaintiff must show that it "falls more harshly on one group than another[.]" *Fuog v. CVS Pharmacy, Inc.*, 2021 WL 4355402, at *4 (D.R.I. Sept. 24, 2021) ("*Fuog I*") (alternation in original). The allegations in the Complaint show that the prescription drug weight loss exclusion could apply to both overweight participants and participants with obesity and Plaintiff provides "no basis to assess or even estimate what portion of those affected by [the] alleged policies are disabled within the meaning of the ADA." *Id.* Thus, it is devoid of "well-pleaded facts to support the degree of the disparate impact alleged, [and] Plaintiff's meaningful access theory must fail." *Id.* at *5.

## **CONCLUSION**

For reasons stated above, Anthem respectfully requests Plaintiff's Complaint be dismissed.

Dated: October 21, 2024                          Respectfully submitted,


By: /s/ *Christopher T. Roach*

Christopher T. Roach
Roach Ruprecht Sanchez & Bischoff, P.C.
527 Ocean Ave
Suite 2
Portland, ME 04103
Tel: 207-747-4870
croach@rrsblaw.com

Daniel J. Hofmeister (*pro hac vice pending*)
Bryan M. Webster (*pro hac vice pending*)
Alex M. Lucas (*pro hac vice pending*)
Reed Smith LLP
10 South Wacker Drive
Suite 4000
Chicago, IL 60606
Tel: 312-207-1000
Fax: 312-207-6400
dhofmeister@reedsmith.com
bwebster@reedsmith.com
alucas@reedsmith.com

Carol B. Lewis (*pro hac vice pending*)
Reed Smith, LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071-1514
Tel: 213-457-8000
Fax: 213-457-8080
carol.lewis@reedsmith.com

***Counsel for Elevance Health, Inc., f/k/a Anthem, Inc.***