# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| REBECCA HOLLAND, on her own behalf and on behalf of those similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>ELEVANCE HEALTH, INC., f/k/a ANTHEM, INC.,<br><br>   Defendant. | Case No. 2:24-cv-00332-LEW<br><br>Honorable Lance E. Walker |

## DEFENDANT ELEVANCE HEALTH, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT

## I. INTRODUCTION

Plaintiff's Opposition (ECF No. 15) does not save her Complaint from dismissal by this Court. Plaintiff insists, against the wrong party, that "obesity" alone is a disability but, in doing so, asks this Court to ignore the myriad of cases holding otherwise. Moreover, Plaintiff's argument that the Plan's prescription weight loss drug exclusion is discriminatory – despite her admission that it applies to everybody -- is, like the allegations in her Complaint, conclusory and lacking in factual support. That is not enough to survive a motion to dismiss in this Court.

## II. ELEVANCE IS NOT A PROPER DEFENDANT.

Plaintiff does not dispute that her Plan was issued by Anthem Health Plans of Maine, Inc. ("Anthem"), or that Elevance – a holding company – is a separate and distinct legal entity. Nevertheless, she argues that Elevance is a proper defendant because, under the ACA, a parent corporation *can be* liable for a subsidiary's allegedly discriminatory health plan, and here, Plaintiff alleges that Elevance "designs, issues, delivers and administers health plans and continues to offer health plans branded under the Anthem name through its subsidiaries." Opp. at 5-6. But apart from conclusory allegations, there are no facts sufficient to sustain this action, including any allegations linking the alleged discrimination to the distinct holding company.[1] Elevance should be dismissed.

## III. PLAINTIFF HAS NOT ALLEGED A DISABILITY – A FATAL FLAW.

***Obesity is not a disability without an underlying physiological disorder.*** As set forth in the Motion to Dismiss ("Motion"), the great weight of authority is clear that obesity alone will not

---

[1] Plaintiff's cited cases confirm that her allegations regarding Elevance are inadequate. In *Silva v. Baptist Health S. Fla., Inc.,* 856 F.3d 824, 842 (11th Cir. 2017), the court held that a parent medical company may be liable for discrimination under Section 504 when one of its hospitals failed to provide working medical equipment to assist hearing impaired patients. In that case, the plaintiff alleged facts showing that the parent medical company owned *and operated* the offending hospital and housed the network to which the faulty equipment was connected. Plaintiff alleges no such facts here. Similarly, in *Hammons v. Univ. of Maryland Med. Sys. Corp.,* 649 F. Supp. 3d 104, 117–118 (D. Md. Jan. 6, 2023), the court held that a parent health company could be liable for sex discrimination under Section 1557 when its wholly-owned and operated hospital denied gender affirming care to a transgender man, but unlike the case here, there were sufficient facts to show control by the parent, *i.e.,* that the parent company directly appointed members of the hospital's board, approved the appointment and removal of hospital officers and mandated that the hospital adhere to its religious policies regarding patient care.

support a discrimination claim unless it is caused by an underlying physiological condition. Mot. at 8-9 (collecting cases).[2] Doubling down on her claim that obesity is a standalone impairment -- and thus a disability -- regardless of its cause, Plaintiff asks the Court to ignore these cases because they are contrary to purported medical literature advocating that obesity itself is a physiological condition. Opp. at 9. But, as the court in *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 891 (7th Cir. 2019) made clear, the ACA "is an antidiscrimination—not a public health—statute," and how the medical community regards obesity and what a plaintiff must plead to establish discrimination are different matters.[3]

Contrary to Plaintiff's assertion, *Cook v. State of R.I. Dept. of Mental Health, Retardation, & Hospitals*, 10 F.3d 17, 21 (1st Cir. 1993) does not hold otherwise. Instead, the Court held that the jury could have plausibly found an impairment because Plaintiff had shown that *her* morbid obesity had an underlying physiological cause. *Id*. at 23. Here, Plaintiff argues that obesity alone is, *per se*, an "impairment." (Opp. at 2.) No court has read *Cook* to support that proposition.

Plaintiff also cites *Mendez v. Brown*, 311 F. Supp. 2d 134, 141 (D. Mass. 2004) and *Nedder v. Rivier College*, 908 F. Supp. 66, 74–75 n.8 (D.N.H. 1995) to support her argument that "obesity can be an impairment" but neither case supports her attempt to create new law. *Mendez* held that "[e]xcept in rare circumstances, obesity is *not* considered a disabling impairment[,]" (emphasis

---

[2] Plaintiff asserts that Anthem has argued that Plaintiff's Complaint should be dismissed because "she does not allege a physiological impairment ***other*** than obesity." (Opp. at 1.) That is not right. Instead, consistent with the weight of authority, Anthem has argued that "a plaintiff must show that an underlying physiological disorder caused their obesity for it to meet the definition of physical impairment." (*See* Mot. at 8-9.)

[3] In *Richardson*, the amici, like Plaintiff here, argued that "because both the medical community and federal and state policymakers understand obesity as a disease, obesity is in and of itself a physiological disorder and therefore a physical impairment within the definition of the ADA." *Richardson*, 926 F.3d at 891 (emphasis in original). The court, however, found this argument unpersuasive in the context of a disability discrimination claim, noting that it would lead to unavoidably unrealistic results. *Id.* at 891. The court went on to explain that, "[i]ndeed, if obesity was a physiological disorder standing alone, then "all obesity would be an ADA impairment" leading to a result where "all obese individuals—found to be as high as 39.8% of the American adult population—automatically have an ADA impairment[.]" Plaintiff's logic here is similarly flawed.

added) and in *Nedder*, the court, while recognizing that *Cook* is "instructive," held that it was "not dispositive, on the issue of morbid obesity as an 'impairment'...."

Plaintiff also proffers EEOC guidance that a plaintiff may show an impairment if she has obesity *or* a physiological condition, but she fails to cite a single case to support this interpretation.[4] Moreover, this same interpretation has been rejected in the Seventh and Eighth Circuits. *See Richardson*, 926 F.3d at 890; *see also Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1108 (8th Cir. 2016). In any event, the EEOC's interpretation of what is an impairment is no longer accorded any deference in light of *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).

***Plaintiff has failed to plead that her obesity substantially limits a major life activity.*** Plaintiff argues that having an obesity diagnosis and being prescribed medication to treat it is sufficient to show that her obesity is substantially limiting. Opp. at 12. As noted in the Motion, however, a medical diagnosis of impairment alone is insufficient to prove a disability. *See Ramos-Echevarría v. Pichis, Inc.*, 659 F.3d 182, 187 (1st Cir. 2011); *Carreras v. Sajo, García & Partners*, 596 F.3d 25, 33 (1st Cir. 2010). In response, Plaintiff argues that these cases are obsolete because they were decided before the ADA was amended, and that "substantially limits" is not a demanding standard under the current ADA. Opp. at 10–11. That argument is misplaced, however, because recent cases applying the ADA's current standard have relied on *Ramos-Echevarría* and *Carreras* for this exact point of law. *See, e.g., Equal Emp. Opportunity Comm'n v. Citizens Bank, N.A.,* 2023 WL 2456641, at * 7 (D.R.I. Mar. 10, 2023) (citing *Ramos-Echevarría* and *Carreras*, and holding that "it is insufficient merely to submit evidence of a medical diagnosis of an impairment[.]").

---

[4] The best Plaintiff can do is to point to an amicus brief that the EEOC submitted to the Ninth Circuit advancing its interpretation that "obesity is physiological in its effects" in *Valtierra v. Medtronic Inc.*, 934 F.3d 1089 (9th Cir. 2019). *See* Opp. at 10. Plaintiff's argument in this regard is misplaced, however, because the Ninth Circuit took no position on the EEOC's suggestion on what constitutes an impairment. *Id.* And, as noted above, the Seventh and Eighth Circuits reject the EEOC's interpretation.

Plaintiff further argues that obesity is "substantially limiting" when it requires prescription medication (Opp. at 11), but the two cases she cites as support, *Arroyo-Ruiz v. Triple-S Management Group*, 206 F. Supp. 3d 701, 713–14 (D.P.R. 2016) (involving dialysis treatment impacting plaintiff's ability to work and travel), and *Shine v. N.Y.C. Housing Authority*, 2020 WL 5604048, at *5 (S.D.N.Y. Sept. 18, 2020) (involving severe asthma that required an asthma machine to breath), involved treatment far more extensive than taking medication.

Lastly, Plaintiff asserts that her allegations that her obesity is chronic and substantially limits her "walking, standing, and sleeping" are sufficient (Opp. p. 13), but none of the cases she cites supports this contention.[5]

## II. PLAINTIFF HAS NOT ALLEGED DISCRIMINATION.

***Plaintiff has not stated a claim for intentional discrimination.*** As set forth in the Motion, Plaintiff's intentional discrimination claim fails because, despite her allegations that the exclusion targets obese members, she admits that the challenged exclusion applies to both disabled and non-disabled individuals alike.[6] Plaintiff nevertheless argues that her plan is facially discriminatory because those with obesity cannot access prescription drugs to treat their condition while other

---

[5] *See, e.g., Cavanaugh v. IDEXX Lab'ys, Inc.,* 2024 WL 2724195, at *8 (D. Me. May 28, 2024) (finding disability where plaintiff was forced to go on leave of medical absence from work due to depression and PTSD); *Arroyo-Ruiz*, 206 F. Supp. 3d at 712 (explaining that plaintiff experienced dizziness and collapsed at work due to heart condition, and required frequent dialysis due to kidney disease); *Johnson v. Whole Foods Mkt. Grp., Inc.*, 657 F. Supp. 3d 158, 175–76 (D. Me. 2023) (plaintiff was forced to take leave of absence from work due to PTSD, and presented therapist certificate PTSD substantially limited his ability to work).

[6] Plaintiff argues that *Bush v. Wang Ctr. For the Performing Arts, Inc.*, Civil Action No. 22-10473-NMG, 2022 U.S. Dist. LEXIS 228636, at *21 (D. Mass. Oct. 31, 2022), *Young v. Facebook, Inc*., 790 F. Supp. 2d 1110, 1116 (N.D. Cal. 2011) and *Doe v. BlueCross BlueShield of Tenn.,* Inc., 926 F.3d 235, 241 (6th Cir. 2019), are inapposite because the plaintiffs in those cases neither alleged disparate treatment nor targeting. Opp. at 15. Plaintiff misses the point. Putting aside the fact that Plaintiff's allegations of targeting are conclusory, each of these cases stand for the broader proposition that there is no intentional discrimination when, like here, the challenged policies apply to disabled and non-disabled individuals alike. Further, although Plaintiff argues that *Young* is outdated, the district court in *Fuog v. CVS Pharmacy, Inc.*, No. 20-337 WES, 2021 U.S. Dist. LEXIS 183035, at *11 (D.R.I. Sep. 24, 2021) – a case relied upon by Plaintiff in her brief -- recently cited *Young* with approval for this exact proposition.

enrollees can for their conditions. This argument ignores the irrefutable point that Plaintiff's plan excludes coverage for weight loss drugs for all members equally (Compl. ¶ 52, Ex. 1 at 86).

Additionally, and as set forth in the Motion, Plaintiff's allegations are too general to plead intentional discrimination under a "deliberate indifference" theory, particularly where, as here, Plaintiff's allegations are made on "information and belief." Mot. at 13. Plaintiff takes issue with this point but merely regurgitates the conclusory allegations of her Complaint in response. Opp. at 15.[7] Plaintiff further argues that a finding of deliberate indifference is a "fact-bound inquiry." Opp. at 15. At this stage, Plaintiff must plead facts showing that Anthem should have known it was substantially likely to violate the ACA's non-discrimination provisions. Plaintiff has not done so here – a point to which Plaintiff has no meaningful response.

***Plaintiff has not stated a claim for proxy discrimination.*** As set forth in the Motion, Plaintiff has not stated a claim for proxy discrimination because she has not pled facts regarding the exclusion's disproportionate effect on disabled insureds (overinclusion) or its ability to serve the needs of similar disabled insureds (underinclusion), historical enactment, or targeted enforcement. *E.S. v. Regence BlueShield*, 2022 WL 279028, at *4 (W.D. Wash. Jan. 31, 2022).

Plaintiff first contends she need not plead statistics to show the weight loss exclusion disproportionately affected obese plan members. Opp. at 17–18. But the two cases Plaintiff cites for this proposition did not address this issue and are inapposite. In *Davis v. Commonwealth Election Commission*, 844 F.3d 1087, 1093 (9th Cir. 2016), the court found that "Native Inhabitants of Guam" was a proxy for race based, in part, on the fact that the law's immediate

---

[7] Plaintiff *cites Lewis v. Spurwink Servs.*, No. 2:22-cv-00054-NT, 2022 U.S. Dist. LEXIS 219145, at *15-*19 (D. Me. Dec. 6, 2022) as an example in which deliberate indifference was sufficiently alleged. But in that case, the defendant had knowledge of the violation of the plaintiff's federally protected rights and did nothing for 10 weeks. *Id*. at *15, Here, in contrast, Plaintiff alleges no facts that Anthem knew that a harm to a federally protected right is substantially likely, which she must do to state a deliberate indifference claim. *Smith v. Walgreens Boots All., Inc*., No. 22-16468, 2024 U.S. App. LEXIS 12, at *4 (9th Cir. Jan. 2, 2024).

predecessor had used an explicit racial classification. In *Tirrell v. Edelblut*, 2024 U.S. Dist. LEXIS 162185, at *8 (D.N.H. Sept. 10, 2024), the court found that biological sex was a proxy for transgender discrimination where the intent (and history) of the statute, on its face, was to single out transgender females. Moreover, while precise statistical accuracy may not be necessary to allege a proxy, plaintiff must, at a minimum, plead facts, not conclusions, to survive a motion to dismiss. *See E.S.*, 2022 WL 279028, at *9–10. Plaintiff has not even done that here.

With respect to defining the proxy, Plaintiff contends that there is a "strong correlation" between obesity and "those denied under the weight loss exclusion," (Opp. at 16–17), but she offers no factual support for this argument. *See Walgreens,* 2024 WL 20063, at *2 (finding plaintiff failed to state a proxy discrimination claim where she failed to allege facts about the proportion of people who would not be affected by the policy). Plaintiff cites *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945 (9th Cir. 2020), for the proposition that she need only allege that the policy targets a protected trait such that most of those impacted have the protected trait. Opp. at 17-18. But *Schmitt* held that a plaintiff must still plead *facts* showing a proxy "fit," *i.e.,* that the exclusion primarily affects disabled persons, which Plaintiff fails to do here. 965 F.3d at 959–960. Additionally, the exclusion does not target people diagnosed with obesity, because, as set forth in the Motion, other groups, such as overweight individuals requiring medication are excluded as well. Mot. at 16. Plaintiff has no response to this point beyond the bald statement that one can "reasonably infer" these are small percentages, but she makes no attempt to back this up with factual allegations. As for Plaintiff's underinclusion claim, she contends that "[t]he surgical treatment offered by Anthem is more invasive, more expensive and less effective than treatment with prescription drugs" (Opp. at 18), but here again she fails to support her argument with any factual allegations. Finally, Plaintiff argues that the "history, circumstance, and application" of the

exclusion supports proxy discrimination (Opp. at 16), but as explained above, these allegations are conclusory and wrongly assume Anthem should have known obesity was a federally protected class, when, in fact, the authority on this issue says otherwise.

***Plaintiff has not alleged a disparate impact discrimination claim.*** As set forth in the Motion, a facially neutral policy cannot support a disparate impact claim when the policy denies *everyone* access, regardless of their disability status. *Alexander v. Choate*, 469 U.S. 287, 299-303 (1985); *see generally* Mot. at 19–20.[8] Plaintiff argues this is irrelevant because it is "obvious" that the weight loss medication exclusion "will impact people with obesity more harshly than those without." Opp. at 20. Not only does this argument lack factual support, but it is hardly obvious, because, as Plaintiff admits, the prescription drug weight exclusion applies equally to overweight and obese members. Compl, ¶51.[9] Plaintiff also argues that statistics are not needed to quantify the degree to which disabled people are affected (Opp. at 20), but Plaintiff offers no allegation, estimate or otherwise, of what percentage of people impacted by the policy are disabled. Without these minimal allegations, Plaintiff's disparate impact claim cannot survive. *See Fuog v. CVS Pharmacy, Inc.,* 2021 WL 4355402, at *4 (D.R.I. Sept. 24, 2021).

### IV. CONCLUSION

For all the foregoing reasons, Plaintiff's Motion to Dismiss should be granted.

---

[8] Citing *Schmitt,* Plaintiff argues that *Alexander* is of limited applicability because the ACA is broader than Section 504 of the Rehabilitation Act and the ACA allows claims for discriminatory benefit design whereas Section 504 does not. Plaintiff overstates *Schmitt. Schmitt* held that under the ACA, insurers must design their benefit plans in a nondiscriminatory manner to ensure that all members receive access to federal and state mandated essential health benefits. 965 F.3d at 955. It does not, however, stand for the proposition that an insurer must cover prescription drug benefits for the disabled that are denied to others, which was the key takeaway of *Alexander.*

[9] Compare with *Kadel v. Folwell*, 100 F.4th 122, 147 (4th Cir. 2024), cited by Plaintiff, in which the barrier at issue would only affect the targeted group.

Dated: November 25, 2024                    Respectfully submitted,

By: /s/ *Christopher T. Roach*

Christopher T. Roach
Roach Ruprecht Sanchez & Bischoff, P.C.
527 Ocean Ave
Suite 2
Portland, ME 04103
Tel: 207-747-4870
croach@rrsblaw.com

Daniel J. Hofmeister (*admitted pro hac vice*)
Bryan M. Webster (*admitted pro hac vice*)
Alex M. Lucas (*admitted pro hac vice*)
Reed Smith LLP
10 South Wacker Drive
Suite 4000
Chicago, IL 60606
Tel: 312-207-1000
Fax: 312-207-6400
dhofmeister@reedsmith.com
bwebster@reedsmith.com
alucas@reedsmith.com

Carol B. Lewis (*admitted pro hac vice*)
Reed Smith, LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071-1514
Tel: 213-457-8000
Fax: 213-457-8080
carol.lewis@reedsmith.com

**Counsel for Elevance Health, Inc., f/k/a Anthem, Inc.**