UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| REBECCA HOLLAND, on her own behalf and on behalf of those similarly situated, | ) ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | No. 2:24-cv-00332-LEW |
| ELEVANCE HEALTH, INC. f/k/a ANTHEM, INC., | ) ) ) | |
| Defendant | ) | |

## <u>ORDER ON MOTION TO DISMISS</u>

In this putative class action, Plaintiff Rebecca Holland alleges that Defendant Elevance Health, Inc., designs and administers health insurance plans or programs that discriminate against the disabled because they deny coverage for weight loss medication. She alleges that whenever a health care provider diagnoses a plan participant as obese and prescribes a weight loss medication the participant must be deemed disabled, and that Elevance's failure to provide coverage for the prescription is a species of disability discrimination.

The matter is before the Court on Elevance Health's Motion to Dismiss, which I grant for reasons that follow.[1]

---

[1] This is a sister case to *Whittemore v. Cigna Health and Life Insurance Company*, No. 2:24-cv-206-LEW. On February 12, 2025, I similarly dismissed that action.

**BACKGROUND**

The Affordable Care Act ("ACA") contains a non-discrimination provision that states:

> "[A]n individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, or section 794 of Title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, <u>or contracts of insurance</u> . . . .

42 U.S.C. § 18116(a) (emphasis added). These protections extend to disability discrimination prohibited under the Rehabilitation Act, which provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

Rebecca Holland is a participant in an Anthem[2] health insurance plan that qualifies as a health program or activity under the ACA. Her plan, the Maine Education Association Benefits Trust ("MEABT"), includes an exclusion of coverage for medications prescribed for the purpose of weight loss.[3] Holland's healthcare provider has diagnosed her as obese and has prescribed her a weight loss medication. However, the MEABT's weight loss

---

[2] Holland acknowledges that her plan is provided and administered through an Elevance subsidiary, Anthem Blue Cross and Blue Shield. Compl. ¶ 40.

[3] *See* Certificate of Coverage, Compl. Ex. 1 at 86. The weight loss exclusion is consistent with the approach taken by the Centers for Medicare and Medicaid Services, which excludes from its Part D coverage weight loss "[a]gents when used for anorexia, weight loss, or weight gain (even if used for a non-cosmetic purpose (i.e., morbid obesity))." *See* Medicare Prescription Drug Benefit Manual Chapter 6 – Part D Drugs and Formulary Requirements, Section 20 (ECF No. 12-1).

exclusion applies to participants who are overweight even if the member's healthcare provider concludes that the weight loss medication is medically necessary to treat obesity.[4]

Not all Anthem plans exclude coverage for weight loss medications. Employers select whether to provide their employees with a plan that covers weight loss medications. Holland's employer, Falmouth Public Schools, chooses to participate in the MEABT, which excludes weight loss medications.

Relying on language from *Cook v. Rhode Island Department of Mental Retardation*, 10 F.3d 17 (1st Cir. 1993), and a medical consensus that describes obesity as a disease state with multiple pathophysiological aspects, Holland alleges that she and all similarly situated persons enrolled in her plan (*i.e.*, all participants diagnosed with obesity who obtain a prescription for a weight loss medication) are qualified individuals with disabilities, and that an exclusion of coverage for weight loss medications amounts to disability discrimination.[5] *Id.* ¶¶ 22-23, 41-42.

Although common sense teaches us that all manner of workplaces can include employees who meet the criteria for inclusion in Holland's prospective class, Holland alleges, counter-intuitively, that there is a pervasive discriminatory bias against these class members that arises from the belief that they "cannot participate in work, benefit from

---

[4] Evidently, there is an exception to the exclusion for morbid obesity, but coverage for morbid obesity is subject to a five-year waiting period. Holland alleges that the waiting period is discriminatory, as no other benefit in the MEABT is subject to that kind of waiting period. Compl. ¶¶ 81-82. I do not address the waiting period in this case because Holland is not in that category and she lacks standing to pursue class action litigation for a class she is not in.

[5] Holland also alleges that she is disabled based on personal limitations related to her obesity diagnosis, which she identifies as limitations in walking, standing, and sleeping.

medical treatment, or fully engage in other aspects of society," *id.* ¶ 26, and that health insurance plans that exclude coverage for weight loss medications are the product of this invidious, societal bias. Holland also alleges that the bias is changing as medical professionals increasingly understand the obesity disease process, and that "Anthem's failure to evaluate whether its Obesity Exclusion was a form of disability discrimination is 'thoughtless indifference' or 'benign neglect' of the coverage needs of insureds with disabilities, a form of discriminatory prejudice." *Id.* ¶ 28.

## DISCUSSION

On a motion to dismiss, I am required to treat the plaintiff's well-pleaded factual allegations as true and to draw all reasonable inferences in the plaintiff's favor, but need not do so for allegations that are conclusory or conjectural in nature. *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018). Ultimately, to overcome the motion, the plaintiff's factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim will not suffice if it rests, ultimately, on "'naked assertions' devoid of 'further factual development.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Holland alleges that the exclusion of coverage in her healthcare plan for weight loss medications is the product of intentional discrimination, proxy discrimination, disparate impact discrimination, and/or deliberate indifference to the possibility of one of these forms of discrimination. Compl. ¶¶ 83-100. Elevance argues that Holland fails to state a claim

4

for relief. Elevance's overarching point is that the weight loss exclusion applies to plan enrollees regardless of disability status, applying equally to overweight persons, obese persons who are not disabled, and obese persons who may be disabled. Given the MEABT's "evenhanded treatment" of persons interested in weight loss medication, Elevance states that the MEABT does not discriminate on the basis of disability and that Holland's suit is actually an attempt to secure preferential access to medication coverage for her health condition. Mot. at 1 (quoting *Alexander v. Choate*, 469 U.S. 287, 304 (1985)). Elevance denies discrimination for these reasons, and also notes that there are Anthem plans that afford coverage for weight loss medications, subject to the payment of a different premium.

I grant Elevance's Motion to Dismiss. Although I reject as conclusory and conjectural Holland's allegation that she and every other participant in the MEABT who has an obesity diagnosis coupled with a prescription for weight loss medication are disabled, I accept for purposes of the Motion to Dismiss that Holland has alleged individual limitations that make her allegation of disability plausible.[6] That is not enough, however,

---

[6] Disability means "a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1); 29 U.S.C. § 705(9)(B), or "results in a substantial impediment to employment," 29 U.S.C. § 705(9)(A), (20). Whether a health condition like obesity results in disability is not a formulaic inquiry based on a mere diagnosis and prescription. It is an individualized inquiry.

> In assessing whether someone is disabled under the ADA, we must consider the impairment's effect on the particular individual. The limitation caused by the impairment must be permanent or long-term. Evidence of a medical diagnosis of impairment, standing alone, is insufficient to prove a disability. What is required is evidence showing that the impairment limits this particular plaintiff to a substantial extent.

*Ramos-Echevarria v. Pichis*, *Inc*., 659 F.3d 182, 187 (1st Cir. 2011) (citation omitted). *See also Albertson's*, *Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999). A so-called "obese" body mass index score

5

for her case to proceed. Holland's allegation of discrimination is likewise conclusory and conjectural. To state a claim, the law requires a plausible factual basis to conclude that Anthem's exclusion of weight loss medications under the MEABT denies to Holland the desired coverage benefit "solely by reason of her disability." 29 U.S.C. § 794(a). The fact that the MEABT does not provide Holland or similarly situated putative class members with coverage for weight loss medications is not a sufficient factual basis to state a plausible claim that the denial is based solely on the presumed presence of a disability. For many plan participants, the weight loss exclusion operates even if they are overweight rather than obese. And for both overweight and obese participants, the exclusion operates whether or not they are disabled. Thus, on its face, the exclusion does not turn on disability status, impacts participants whether they are disabled or not, and does not isolate disabled

---

will for many individuals not even suggest a physical impairment, let alone a disability. A physician's willingness to prescribe a weight-loss medication does not dictate the answer, either.

Holland attempts to short-circuit an individualized inquiry by relying on *Cook v. Rhode Island Department of Mental Retardation*, 10 F.3d 17 (1st Cir. 1993). There, the First Circuit considered the "pathbreaking 'perceived disability' case" of Cook, a morbidly obese individual denied employment, who alleged she was not substantially limited in her ability to perform the job (had, in fact, passed the physical examination) and proceeded on the basis of being perceived as disabled. *Id.* at 20-21. The Court upheld Cook's favorable jury verdict because the jury could have found either that Cook *was not impaired or was impaired but not substantially limited* in regard to major life activities, and yet the employer treated her as both impaired and substantially limited due to morbid obesity. *Id.* at 23. As to the employer's perception of Cook's impairment, the Court held that the jury could have concluded that the employer deemed Cook impaired based on "expert testimony that morbid obesity is a physiological disorder involving a dysfunction of both the metabolic system and the neurological appetite-suppressing signal system, capable of causing adverse effects within the musculoskeletal, respiratory, and cardiovascular systems." *Id.*

Holland asserts that if the medical community's consensus is that obesity is a physiological disorder involving the dysfunction of one or more body systems then *Cook* has the talismanic effect of rendering all obese plan participants in the First Circuit impaired, minimally, and that the addition of a doctor's prescription conclusively establishes disability. Opp'n (ECF No. 15) at 7-8, 11-12. I do not find this convoluted theorem to be a valid basis for inferring that all obese individuals with a prescription for weight loss medication are disabled or perceived as such, much less denied coverage for weight loss medication based solely on discriminatory bias.

participants for discriminatory treatment. Furthermore, employers have the option to choose a plan with or without coverage for weight loss medication. Holland's employer chose the MEABT plan design. Finally, and most critically, Holland's Complaint does not include allegations that would support a finding, based on any facts, that Elevance or Anthem[7] has ever regarded her (let alone all obese persons) to be disabled. For these reasons, I conclude that Holland's bare conclusory allegations to the contrary do not support a plausible finding that Anthem's exclusion of coverage for weight loss medications amounts to intentional, proxy, disparate impact, or deliberate indifference discrimination against Holland or the putative class.

## CONCLUSION

The Motion to Dismiss (ECF No. 12) is GRANTED. The case is DISMISSED.

SO ORDERED.                              Dated this 9th day of April, 2025.

                                         /s/ Lance E. Walker
                                         Chief U.S. District Judge

---

[7] Elevance also argues that Holland has sued the wrong entity, since the MEABT is administered by an Anthem subsidiary, citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."). Holland responds that Elevance is a proper defendant because Elevance and its subsidiaries comprise a "program or activity, any part of which is receiving federal financial assistance." Opp'n at 5 (quoting 42 U.S.C. § 18116(a)). Holland also quotes 45 C.F.R. § 92.4(2), which defines a "health program or activity" to include "[a]ll of the operations of any entity principally engaged in the provision or administration of any health projects, enterprises, ventures, or undertakings." Because the program or activity here is the MEABT, the logical defendant is the entity that provides and/or administers the MEABT. Furthermore, the § 92.4 definition may not aid Holland because a subsidiary is not a mere operation of a parent entity, or vice versa. On the other hand, the First Circuit might rule in Holland's favor in the particularized context of the ACA based on its view of "public convenience, fairness, and equity." *See, e.g., Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co.*, 210 F.3d 18, 25-26 (1st Cir. 2000) (2-1) (quoting *Town of Brookline v. Gorsuch*, 667 F.2d 215, 221 (1st Cir. 1981)). Given the lack of reliable guidance on the issue, I rest my decision to dismiss the case on the failure to state a claim of disability discrimination.